DFE/aa

11TH CIR. CASE NO. <u>22-11717</u>
S.D. FLA. CASE NO. 0:18-cv-60788- JEM

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

SPRINT COMMUNICATIONS LLC,
Plaintiff/Appellee,

v.

RETROBRANDS USA LLC, JEFFREY KAPLAN, AND
NEXTEL MOBILE WORLDWIDE, INC.

Defendants/Appellants.

_____

**APPELLANTS' *AMENDED* OPENING-INITIAL BRIEF** ©2023

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(FORT LAUDERDALE DIV.)

ALEX BROWN, ESQ.
THE CONCEPT LAW GROUP PA
6400 North Andrews Avenue, Suite 500
Fort Lauderdale, Florida 33309
*Local Trial Counsel for Appellants*

JAMES J. KERNELL, ESQ. (*pro hac vice*)
KYLE D. DONNELLY, ESQ. (*pro hac vice*)
AVEK IP LLC
8900 State Line Road, Suite 500
Leawood, Kansas 66206
*Trial Counsel for Appellants*

DOROTHY F. EASLEY, MS JD BCS APPEALS
EASLEY APPELLATE PRACTICE PLLC
FLA. BAR NO. 0015891
1200 Brickell Avenue, Suite 1950
Miami, Florida 33131
T: (305) 444-1599; 800-216-6185
FLORIDA BAR DESIGNATED E-MAIL:
E: administration@easleyappellate.com
admin2@easleyappellate.com
\* *Lead Appellate Counsel for Appellants*

*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

## APPELLANTS JEFFREY KAPLAN, RETROBRANDS USA LLC, AND NEXTEL MOBILE WORLDWIDE, INC.'S, CERTIFICATE OF INTERESTED PERSONS & CORPORATE DISCLOSURE

To assist the Court in evaluating potential conflicts, the undersigned counsel, pursuant to Rule 26.1, Fed. R. App. P., and Eleventh Circuit Internal Operating Rules 26.1-1, -2, and -3, hereby discloses that, based on the information provided to Appellants JEFFREY KAPLAN, RETROBRANDS USA LLC, and NEXTEL MOBILE WORLDWIDE, INC., and the review of the record, Appellants have no parent corporation and no publicly-held companies holding 10% or more of their stock, and further states:

a)     Jeffrey Kaplan is a natural person.

b)     Sprint Communications LLC is an indirect wholly-owned subsidiary of Sprint LLC.

c)     On December 31, 2021, Sprint Corporation converted to a limited liability company and is now Sprint LLC, which is a direct wholly-owned subsidiary of T-Mobile USA, Inc.

d)     T-Mobile USA, Inc., a Delaware corporation, is a direct wholly-owned subsidiary of T-Mobile US, Inc., a Delaware corporation.

e)     T-Mobile US, Inc. (NASDAQ: TMUS) is a publicly-traded company listed on the NASDAQ Global Select Market of NASDAQ Stock Market LLC ("NASDAQ").

f)     Deutsche Telekom Holding BV, a limited liability company (besloten

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

vennootschap met beperkte aansprakelijkheidraies) organized and existing under the laws of the Netherlands ("DT BV"), owns more than 10% of the shares of T-Mobile US, Inc.

g)   DT BV is a direct, wholly-owned subsidiary of T-Mobile Global Holding GmbH, a Gesellschaft mit beschränkter Haftung organized and existing under the laws of the Federal Republic of Germany ("Holding").

h)   Holding, is in turn a direct, wholly-owned subsidiary of T-Mobile Global Zwischenholding GmbH, a Gesellschaft mit beschränkter Haftung organized and existing under the laws of the Federal Republic of Germany ("Global").

i)   Global is a direct, wholly-owned subsidiary of Deutsche Telekom AG, an Aktiengesellschaft organized and existing under the laws of the Federal Republic of Germany ("Deutsche Telekom").

j)   The principal trading market for Deutsche Telekom's ordinary shares is the trading platform "Xetra" of Deutsche Börse AG. Deutsche Telekom's ordinary shares also trade on the Frankfurt, Berlin, Düsseldorf, Hamburg, Hannover, München and Stuttgart stock exchanges in Germany. Deutsche Telekom's American Depositary Shares ("ADSs"), each representing one ordinary share, trade on the OTC market's highest tier, OTCQX International Premier (ticker symbol: "DTEGY").

Appellants further certify that the following persons and entities have some

*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

interest in the outcome of this case:

1. AVEK IP LLC

   (Counsel for Defendants/Counterclaimants)

2. Brown, Alex

   (Local counsel for Defendant/Counterclaimants)

3. Calabrese, Stephen

   (Defendant/Counterclaimant)

4. DeFord, Amanda L.

   (Counsel for Plaintiff/Appellee)

5. Concept Law

   (Counsel for Defendants/Counterclaimants)

6. Donnelly, Kyle (*pro hac vice*)

   (Counsel for Defendants/Counterclaimants)

7. Easley Appellate Practice PLLC

   (Appellate Counsel for Appellants)

8. Easley, Dorothy F.

   (Appellate Counsel for Appellants)

9. Ellis, Jonathan Y.

   (Counsel for Appellee)

10. Holladay-Tobais, Sarah F.

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

(Counsel for Plaintiff/Appellee)

11. Kaplan, Jeffrey, Retrobrands USA LLC, and Nextel Mobile Worldwide, Inc.

   (Defendant/Counterclaimant/Appellant)

12. Kernell, James (*pro hac vice*)

   (Counsel for Defendants/Counterclaimants)

13. Lee & Amtzis, PL

   (Counsel for Defendants/Counterclaimants)

14. Martinez, Honorable Jose E.

   (U.S. District Court Southern District of Florida, Fort Lauderdale Division)

15. McGuire Woods LLP

   (Counsel for Plaintiff/Appellee)

16. Nextel, Inc., d/b/a/ Nextel Worldwide

   (Defendant/Counterclaimant)

17. Nextel Mobile Worldwide, Inc.

   (Defendant/Counterclaimant/Appellant)

18. Retrobrands USA LLC

   (Defendant/Counterclaimant/Appellant)

19. Riopelle, Brian

   (Counsel for Plaintiff/Appellee)

Easley Appellate Practice, PLLC, 1200 Brickell Ave., Suite 1950, Miami, Florida 33131 305-444-1599 800-216-6185

20. Rogers, Daniel B.

(Counsel for Plaintiff/Appellee)

21. Rottman, Emily Yandle

(Counsel for Plaintiff/Appellee)

22. Schwartz, Wayne H.

(Former Counsel for Defendants/Counterclaimants)

23. Shook, Hardy & Bacon LLP

(Counsel for Plaintiff/Appellee)

24. Snow, Magistrate Judge Lurana S.

(Former Magistrate in U.S. District Court Southern District of Florida, Fort Lauderdale Division)

25. Sprint Communications LLC

(Plaintiff/Appellee)

26. Spielman, Darren

(Local Trial Co-Counsel for Defendant/ Counterclaimant)

27. Wheatley, Lucy J.

(Counsel for Plaintiff/Appellee)

Easley Appellate Practice, PLLC, 1200 Brickell Ave., Suite 1950, Miami, Florida 33131  305-444-1599  800-216-6185

28. Becerra, Magistrate Judge Jacqueline

(Successor Magistrate in U.S. District Court Southern District of Florida, Fort

Lauderdale Division)

Respectfully submitted,

BY:   /s/ Dorothy F. Easley
DOROTHY F. EASLEY, MS, JD, BCS APPEALS

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

## STATEMENT REGARDING ORAL ARGUMENT

Appellants JEFFREY KAPLAN, RETROBRANDS USA LLC, AND NEXTEL MOBILE WORLDWIDE, INC., respectfully request Oral Argument. This is an extensive record with certain issues of first impression or novel in this Circuit. In particular, it is an important test case regarding two issues: First, what constitutes "continuous use in commerce" of a trademark versus the disfavored "warehousing" of trademarks and mere promotion use of the mark in a different course of trade with no continuous use in commerce and no evidence of actual intent to resume use in commerce. *See, e.g., Cumulus Media, Inc. v. Clear Channel Communs., Inc.*, 304 F.3d 1167, 1173 (11th Cir. 2002); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195-96 (11th Cir. 2001) (collecting cases). Second, failure to timely elect statutory damages versus being restricted to proof of actual damages under the Lanham Act and the due process considerations triggered therein for awards based on speculation and conjecture. This Court's *Jordan v. Time, Inc.*, 111 F.3d 102, 104 (11th Cir. 1997),* discussed this issue but in a different context. Accordingly, Oral Argument is requested for these reasons.

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

# TABLE OF CONTENTS

APPELLANTS JEFFREY KAPLAN, RETROBRANDS USA LLC, AND NEXTEL MOBILE
WORLDWIDE, INC.'S CERTIFICATE OF INTERESTED PERSONS & CORPORATE
DISCLOSURE ............................................................................................. C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................. C-7

TABLE OF CONTENTS .................................................................................... i

TABLE OF AUTHORITIES ............................................................................... v

OTHER AUTHORITIES ................................................................................. xiv

STATEMENT OF JURISDICTION ................................................................... xvi

I. STATEMENT OF THE ISSUES ...................................................................... 1

II. STATEMENT OF THE CASE AND FACTS ...................................................... 1

    A. COURSE OF THE PROCEEDINGS AND DISPOSITION BELOW ....................... 1

    B. STANDARDS OF REVIEW ....................................................................... 7

    C. STATEMENT OF FACTS ......................................................................... 8

        1. *The trial evidence of Nextel's beginning and end* ............................ 8

        2. *The trial testimony about Mr. Calabrese's attempt to revive the
           abandoned brand* ........................................................................ 13

        3. *The trial testimony was also that, after a full investigation, Mr. Kaplan
           determined Sprint had abandoned the NEXTEL Marks, so he began to
           revive the discarded brand* ........................................................... 15

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

ARGUMENTS SUMMARY ................................................................................ 19

ARGUMENTS.................................................................................................... 20

    ISSUE I: THE SUIT SHOULD BE DISMISSED FOR LACK OF STANDING. THERE HAS

    BEEN NO ACTUAL OR IMMINENT CONCRETE INJURY TO SPRINT (OR T-

    MOBILE). AND, BECAUSE THERE WAS NO GOODWILL LEFT IN THE

    ABANDONED NEXTEL MARKS, SPRINT COULD NOT HAVE TRANSFERRED

    ANY TRADEMARK RIGHTS TO T-MOBILE ................................................ 20

    ISSUE II: THE GREAT WEIGHT OF THE EVIDENCE IS THIS: SPRINT STOPPED USING

    THE NEXTEL MARKS IN COMMERCE WITH NO OBJECTIVE EVIDENCE OF

    INTENT TO RESUME USE IN COMMERCE. THUS, SPRINT ABANDONED THE

    NEXTEL MARKS. THE JURY'S FINDING OTHERWISE IS CLEARLY

    ERRONEOUS AND DENIAL OF APPELLANTS' MOTION JNOV WAS ERROR .............. 20

    ISSUE III: DILUTION REQUIRES A MARK BE SO FAMOUS THAT IT IS WIDELY

    KNOWN BY THE GENERAL PUBLIC. BUT THE ONLY EVIDENCE—EVEN FROM

    SPRINT'S OWN WITNESSES—WAS NEXTEL IS AT MOST A NICHE BRAND IN A

    NARROW PUBLIC-SERVICE INDUSTRY. THUS, DENIAL OF APPELLANTS'

    MOTION JNOV WAS ERROR .................................................................... 33

    ISSUE IV: THE LANHAM ACT REQUIRES A PLAINTIFF TO ELECT STATUTORY

    DAMAGES BEFORE FINAL JUDGMENT IS ENTERED. SPRINT FAILED TO DO SO

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

OR PROVE ANY AMOUNT OF DAMAGES OVER $38,758.75. THUS, AT BEST,

SPRINT IS LIMITED TO ACTUAL DAMAGES PROOF ...................................................... 36

    A. SPRINT FAILED TO ELECT STATUTORY DAMAGES BEFORE FINAL

        JUDGMENT WAS ENTERED, AS REQUIRED BY THE LANHAM ACT ............... 36

    B. AT BEST, SPRINT WAS ENTITLED TO $38,758.75 ACTUAL DAMAGES

        PROOF .................................................................................................... 39

    C. EVEN IF SPRINT IS ENTITLED TO STATUTORY DAMAGES, A $4.5

        MILLION STATUTORY DAMAGES AWARD VIOLATES APPELLANTS'

        RIGHT TO DUE PROCESS .......................................................................... 42

ISSUE V: THE PERMANENT INJUNCTION ORDER SHOULD HAVE BEEN VACATED

BECAUSE THE DISTRICT COURT LACKED JURISDICTION TO ENTER IT.

FURTHER, THE GREAT WEIGHT OF THE EVIDENCE IS SPRINT IS NOT LIKELY TO

SUFFER AN IRREPARABLE INJURY AND THERE IS NO RISK OF CONFUSION. .............. 44

    A. ONCE THE DISTRICT COURT ENTERED THE AMENDED FINAL

        JUDGMENT AND APPELLANTS TIMELY FILED THEIR AMENDED

        NOTICE OF APPEAL, JURISDICTION TRANSFERRED TO THE APPELLATE

        COURT. THUS, THE DISTRICT COURT WAS WITHOUT JURISDICTION TO

        ENTER THE PERMANENT INJUNCTION ORDER ........................................... 44

    B. SPRINT IS NOT ENTITLED TO A PERMANENT INJUNCTION BECAUSE THE

        GREAT WEIGHT OF THE EVIDENCE IS THAT SPRINT IS UNLIKELY TO

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

SUFFER AN IRREPARABLE INJURY AND THERE IS NO RISK OF

CONFUSION ................................................................................................... 47

CONCLUSION .................................................................................................... 50

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,   TYPEFACE

REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ..................................... 51

CERTIFICATE OF SERVICE ................................................................................ 51

iv

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Chesapeake, Potomac & Tidewater Books, Inc.,*

  60 F. Supp. 2d 544 (E.D. Va. 1999) .................................................. 38

\* *Allstar Mktg. Grp., LLC v. Media Brands Co.,*

  775 F. Supp. 2d 613 (S.D.N.Y. 2010) ............................................. 43

\* *AmBrit, Inc. v. Kraft, Inc.,*

  812 F.2d 1531 (11th Cir. 1986) ...................................................... 25

\* *American Photographic Pub. Co. v. Ziff-Davis Pub. Co.,*

  135 F.2d 569 (7th Cir. 1943) .......................................................... 31

\* *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.,*

  522 F.3d 1200 (11th Cir. 2008) ...................................................... 47

*Avery Dennison Corp. v. Sumpton,*

  189 F.3d 868 (9th Cir. 1999),

  *superseded by statute on other grounds reccognized in*,

  *Cottonwood Fin. Ltd. v. Cash Store Fin. Servs.,*

  778 F. Supp. 2d 726 n.29 (N.D. Tex. 2011) ................................... 34

\* *Blumenthal Distrib., Inc. v. Herman Miller, Inc.,*

  963 F.3d 859 (9th Cir. 2020) ................................................*passim*

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

*Bodum USA, Inc. v. A Top New Casting Inc.,*

  927 F.3d 486 (7th Cir. 2019) ......................................................... 27

*Bryant v. Media Right Prods.,*

  603 F.3d 135 (2d Cir. 2010).......................................................... 43

\* *CAE, Inc. v. Clean Air Eng'g, Inc.,*

  267 F.3d 660 (7th Cir. 2001) ........................................................ 27

\* *Caesars World, Inc. v. Venus Lounge, Inc.,*

  520 F.2d 269 (3d Cir. 1975)........................................................... 39

*Ced's, Inc. v. United States Envtl. Prot. Ag.,*

  745 F.2d 1092 (7th Cir. 1984) ....................................................... 46

*Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc.,*

  921 F.2d 467 (3d Cir. 1990)........................................................... 49

*Checkpoint Sys. v. Check Point Software Techs., Inc.,*

  269 F.3d 270 (3d Cir. 2001)........................................................... 49

*Coach Servs. v. Triumph Learning LLC,*

  668 F.3d 1356 (Fed. Cir. 2012) ..................................................... 34

\* *Coastal Corp. v. Tex. E. Corp.,*

  869 F.2d 817 (5th Cir. 1989) ......................................................... 46

*Conagra, Inc. v. Singleton,*

  743 F.2d 1508, 1516 n.12 (11th Cir. 1984).................................... 8

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

\* *Conversive, Inc. v. Conversagent, Inc.,*

  433 F. Supp. 2d 1079 (C.D. Cal. 2006) .......................................................... 23

*Cumulus Media, Inc. v. Clear Channel Communs., Inc.,*

  304 F.3d 1167 (11th Cir. 2002) ............................................................... C-7, 24

*eBay Inc. v. MercExchange, L.L.C.,*

  547 U.S. 388 (2006) ....................................................................................... 47

*Emergency One, Inc. v. Am. FireEagle, Ltd.,*

  228 F.3d 531 (4th Cir. 2000) .................................................................. *passim*

*Exxon Corp. v. Humble Expl. Co.,*

  695 F.2d 96 (5th Cir. 1983) ........................................................................... 30

\* *Feltner v. Columbia Pictures Tv,*

  523 U.S. 340 (1998) ....................................................................................... 37

*Gabbanelli Accordions & Imps., L.L.C. v.*

  *Ditta Gabbanelli Ubaldo Di Elio Gabbanelli,*

  575 F.3d 693 (7th Cir. 2009) .................................................................. *passim*

*Golan v. FreeEats.com, Inc., 930 F.3d 950,*

  962 (8th Cir. 2019) ........................................................................................... 7

*Goodman v. New Horizons Cmty. Serv. Bd.,*

  No. 05-14717, 2006 U.S. App. LEXIS 9040 (11th Cir. Apr. 12, 2006) ...................... 45

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

*Gould Elecs., Inc. v. United States,*

220 F.3d 169, 177 (3d Cir. 2000) ............................................. 20

*Gucci Am., Inc. v. Gold Ctr. Jewelry,*

158 F.3d 631 (2d Cir. 1998) ................................................ 37

\* *Hamilton Int'l Ltd. v. Vortic LLC,*

13 F.4th 264 (2d Cir. 2021) ................................................ 48

*Haygood v. Auto-Owners Ins. Co.,*

995 F.2d 1512 (11th Cir. 1993) ............................................. 7

\* *Hiland Potato Chip Co. v. Culbro Snack Foods, Inc.,*

720 F.2d 981 (8th Cir. 1983) .......................................... 25, 27

\* *Hoop Culture, Inc. v. Gap Inc.,*

648 F. App'x 981 (11th Cir. 2016) .......................................... 48

\* *In re JobDiva, Inc.,*

843 F.3d 936 (Fed. Cir. 2016) ............................................. 29

\* *In re Remington Prods.,*

1987 TTAB LEXIS 91 U.S.P.Q.2D (BNA) 1714,

(Trademark Trial & App. Bd. January 29, 1987) ............................. 28

\* *Int'l Asso. of Machinists & Aerospace Workers v. E. Air Lines, Inc.,*

847 F.2d 1014 (2d Cir. 1988) ............................................. 46

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES
*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

*ITC Ltd. v. Punchgini, Inc.,*

    482 F.3d 135 n.9 (2d Cir. 2007) ....................................................... 25

*Jolibois v. FIU Bd. of Trs.,*

    654 F. App'x 461 (11th Cir. 2016)................................................... 39

*Jordan v. Time, Inc.,*

    111 F.3d 102 (11th Cir. 1997) .........................................C-7, 38

*Lazar v. Cecelia Co.,*

    30 F. Supp. 769 (S.D.N.Y. 1939) ................................................... 23

*Lipphardt v. Durango Steakhouse of Brandon, Inc.,*

    267 F.3d 1183 (11th Cir. 2001) ....................................................... 8

*Lujan v. Defs. of Wildlife,*

    504 U.S. 555 (1992) ...................................................................... 21

* *Maltina Corp. v. Cawy Bottling Co.,*

    613 F.2d 582 (5th Cir. 1980) ......................................................... 42

* *MB Fin. Bank, N.A. v. MB Real Estate Servs., L.L.C.,*

    No. 02 C 5925, 2003 U.S. Dist. LEXIS 10578 (N.D. Ill. June 20, 2003).................... 27

*McClatchy Newspapers v. Cent. Valley Typographical Union,*

    *No. 46*, 686 F.2d 731 (9th Cir. 1982),

    *cert. denied*, 459 U.S. 1071 (1982)............................................... 46

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

\* *Micromuse, Inc. v. Micromuse, Plc.,*

  304 F. Supp. 2d 202 (D. Mass. 2004) ............................................................33

\* *Mister Donut of Am., Inc. v. Donut, Inc.,*

  418 F.2d 838 (9th Cir. 1969),

  *overruled on other grounds, Golden Door, Inc. v. Odisho,*

  646 F.2d 347 (9th Cir. 1980) ......................................................................23

*Mullane v. Cent. Hanover Bank & Tr. Co.,*

  339 U.S. 306 (1950) ...................................................................................39

\* *Nat. Answers, Inc. v. SmithKline Beecham Corp.,*

  529 F.3d 1325 (11th Cir. 2008) ..........................................................*passim*

*Nat'l Min. Co. v. Bourjois, Inc.,*

  62 F.2d 1 (7th Cir. 1932).............................................................................22

*NLRB v. Cincinnati Bronze, Inc.,*

  829 F.2d 585 (6th Cir. 1987) ......................................................................45

*Oboler v. Goldin,*

  714 F.2d 211 (2d Cir. 1983).........................................................................39

\* *Olem Shoe Corp. v. Wash. Shoe Corp.,*

  591 F. App'x 873 n.5 (11th Cir. 2015)........................................................38

*Otis Clapp & Son, Inc. v. Filmore Vitamin Co.,*

  754 F.2d 738, 744 (7th Cir. 1985) ..........................................................7, 40

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

*Pensacola Motor Sales, Inc. v. E. Shore Toyota, Ltd. Liab. Co.,*

   684 F.3d 1211 (11th Cir. 2012) ...................................................... 33

*Pictet Overseas Inc. v. Helvetia Tr.,*

   905 F.3d 1183 (11th Cir. 2018) ........................................................ 8

* *Planetary Motion, Inc. v. Techsplosion, Inc.,*

   261 F.3d 1188 (11th Cir. 2001) ................................................. 29, 30

*Porous Media Corp. v. Pall Corp.,*

   173 F.3d 1109 (8th Cir. 1999) ....................................................... 40

* *Ramada Inns, Inc. v. Gadsden Motel Co.,*

   804 F.2d 1562 (11th Cir. 1986) ..................................................... 41

*Rolex Watch U.S.A., Inc. v. Hernandez,*

   No. 13-20643-CIV-GRAHAM/GOODMAN, 2013 U.S. Dist. LEXIS

   197201 (S.D. Fla. Aug. 12, 2013) ................................................. 43

* *Rosetti v. Shalala,*

   12 F.3d 1216 (3d Cir. 1993) .......................................................... 22

* *Siegel v. LePore,*

   234 F.3d 1163 (11th Cir. 2000) ................................................. 47, 48

* *Specht v. Google Inc.,*

   747 F.3d 929 (7th Cir. 2014) .................................................... 25, 30

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

\* *St. Charles Mfg. Co. v. Mercer,*

  737 F.2d 891 (11th Cir. 1983) ................................................................40, 41

\* *St. Louis, I.M. & S. Ry. Co. v. Williams,*

  251 U.S. 63 (1919) ........................................................................................43

*Steffel v. Thompson,*

  415 U.S. 452 n.10 (1974) ..............................................................................22

\* *SunTrust Bank v. Houghton Mifflin Co.,*

  268 F.3d 1257 (11th Cir. 2001) ....................................................................47

*Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.,*

  889 F.2d 1018 (11th Cir. 1989) ....................................................................24

*Taylor v. Mentor Worldwide LLC,*

  940 F.3d 582 (11th Cir. 2019) ........................................................................7

\* *Thane Int'l v. Trek Bicycle Corp.,*

  305 F.3d 894 (9th Cir. 2002) ..................................................................34, 35

\* *Thompson v. Haynes,*

  305 F.3d 1369 (Fed. Cir. 2002) ....................................................................42

*Top Tobacco, L.P. v. N. Atl. Operating Co.,*

  509 F.3d 380 (7th Cir. 2007) ........................................................................34

*TransUnion LLC v. Ramirez,*

  141 S. Ct. 2190 (2021) ..................................................................................22

xii

*Twin Peaks Prods. v. Publ'ns Int'l, Ltd.,*

 996 F.2d 1366 (2d Cir. 1993).........................................................38

\* *United Phosphorus, Ltd. v. Midland Fumigant, Inc.,*

 205 F.3d 1219 (10th Cir. 2000) ..................................................42

\* *United States v. Amodeo,*

 916 F.3d 967 (11th Cir. 2019) ....................................................22

*W. H. Childs & Son v. G. Sidenberg & Co.,*

 11 F.2d 463 (D.C. Cir. 1926) .......................................................23

*W.W.W. Pharm. Co. v. Gillette Co.,*

 984 F.2d 567 (2d Cir. 1993)........................................................49

\* *WarnerVision Entm't Inc. v. Empire of Carolina Inc.,*

 915 F. Supp. 639 (S.D.N.Y. 1996) .............................................30

*Williams v. First Advantage LNS Screening Sols., Inc.,*

 947 F.3d 735 (11th Cir. 2020) .......................................................7

*Winter v. NRDC, Inc.,*

 555 U.S. 7 (2008).......................................................................47

*Xoom, Inc. v. Imageline, Inc.,*

 323 F.3d 279 (4th Cir. 2003),

 *abrogated on other grounds, Reed Elsevier, Inc. v. Muchnick,*

 559 U.S. 154 (2010) ...................................................................41

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

## OTHER AUTHORITIES

Eleventh Circuit Civil Pattern Jury Instructions, Section 10.6 (2013) ........................... 38

Eleventh Circuit Internal Operating Rules 26.1 .................................................. 1

Federal Rule of Appellate Procedure 26.1 ...................................................... 1

Federal Rule of Appellate Procedure 32 ....................................................... 51

Federal Rule of Civil Procedure 12 ........................................................... 20

Federal Rule of Civil Procedure 58 ............................................................ 4

Florida's Deceptive and Unfair Trade Practices Act, Section 501.211 ........................... 2

McCarthy on Trademarks and Unfair Competition, Section 17 ............................*passim*

U.S. Code Title 15, Section 111 ............................................................. 37

U.S. Code Title 15, Section 1060 ........................................................... 22

U.S. Code Title 15, Section 1114 ............................................................ 2

* U.S. Code Title 15, Section 1117 .....................................................*passim*

U.S. Code Title 15, Section 1121 ............................................................ xvi

* U.S. Code Title 15, Section 1125 .....................................................*passim*

* U.S. Code Title 15, Section 1127 .....................................................*passim*

U.S. Code Title 28, Section 1291 ............................................................ xvi

U.S. Code Title 28, Section 1331 ............................................................ xvi

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

U.S. Code Title 28, Section 1338 ........................................................................xvi

U.S. Code Title 28, Section 1367 ........................................................................xvi

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

## STATEMENT OF JURISDICTION

The U.S. District Court for the Southern District of Florida had possible subject-matter jurisdiction [*see* Issues I and V *infra*] under 15 U.S.C. §§ 1121 and 1125 and 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over the state and common law claims under 28 U.S.C. § 1367. This Court has jurisdiction under 28 U.S.C.S. § 1291 from all district court final decisions and nonfinal decisions subsumed therein by operation of law.

On May 19, 2022, after entry of an April 22, 2022, Final Judgment on Jury Verdict [DE310 at 1–2],[1] Defendants timely filed their Omnibus Motion for Judgment Notwithstanding the Verdict; Motion to Alter or Amend the Judgment; and Alternatively, Motion for a New Trial. DE327 at 1–28.  On May 20, 2022, Appellants Retrobrands USA LLC, Nextel Mobile Worldwide, and Jeffrey Kaplan, timely appealed. DE329 at 1. On July 19, 2022, the district court granted in part and denied in part Defendants' Omnibus Motion. DE352 at 1–6. On July 20, 2022, Appellants timely filed their Amended Notice of Appeal to include that Order and an Amended Final Judgment. DE354 at 1. Appellant then timely filed their Second Amended Notice of Appeal [DE368], as well as an independent Notice of Appeal [DE367], both to include

---

[1] The record below shall be referred to as DE__ at ___ reflecting CM/ECF document entry number and page, respectively. All parties will be referred to as they were below unless otherwise set forth herein. All emphasis is added unless otherwise noted. Before trial, Sprint changed to a single-member LLC. DE247. This Amended Brief is filed pursuant to this Court's January 27, 2023 permitting same. 11th.Cir.DE43.

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

all prior judgments and orders, and a subsequently entered Permanent Injunction Order, to perfect appellate jurisdiction.

On October 14, 2022, Appellants filed a Motion in this Court to Determine Jurisdiction and Hold the Appeal in Abeyance ("Jurisdiction Motion") during the pendency of the Rule 59/60 Motion to Vacate [DE365] the Permanent Injunction Order [DE356], per Fed. R. App. P. 4. While the Motion to Determine Jurisdiction was pending, Appellants filed an Opening-Initial Brief for cautionary compliance with Court deadlines. On December 9, 2022, the Court held the appeal in abeyance until Appellants Rule 59/60 Motion to Vacate was resolved. 11th.Cir.DE37. On December 13, 2022, Appellants filed a Motion for Leave to Withdraw Opening-Initial Brief and to file Amended Initial-Opening Brief [11th.Cir.DE39], which the Court granted on January 27, 2023, with instructions to file the Amended Initial-Opening Brief within 21 days. 11th.Cir.DE43. This Brief is being timely filed by that Order, which Brief additionally addresses the resolved Fed. R. Civ. P. 59/60 Motion.

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

# I. STATEMENT OF THE ISSUES

ISSUE I: THE SUIT SHOULD BE DISMISSED FOR LACK OF STANDING. THERE HAS BEEN NO ACTUAL OR IMMINENT CONCRETE INJURY TO SPRINT (OR T-MOBILE). AND, BECAUSE THERE WAS NO GOODWILL LEFT IN THE ABANDONED NEXTEL MARKS, SPRINT COULD NOT HAVE TRANSFERRED ANY TRADEMARK RIGHTS TO T-MOBILE.

ISSUE II: THE GREAT WEIGHT OF THE EVIDENCE IS THIS: SPRINT STOPPED USING THE NEXTEL MARKS IN COMMERCE WITH NO OBJECTIVE EVIDENCE OF INTENT TO RESUME USE IN COMMERCE. THUS, SPRINT ABANDONED THE NEXTEL MARKS. THE JURY'S FINDING OTHERWISE IS CLEARLY ERRONEOUS AND DENIAL OF APPELLANTS' MOTION JNOV WAS ERROR.

ISSUE III: DILUTION REQUIRES A MARK BE SO FAMOUS THAT IT IS WIDELY KNOWN BY THE GENERAL PUBLIC. BUT THE ONLY EVIDENCE—EVEN FROM SPRINT'S OWN WITNESSES—WAS NEXTEL IS AT MOST A NICHE BRAND IN A NARROW PUBLIC-SERVICE INDUSTRY. THUS, DENIAL OF APPELLANTS' MOTION JNOV WAS ERROR.

ISSUE IV: THE LANHAM ACT REQUIRES A PLAINTIFF TO ELECT STATUTORY DAMAGES BEFORE FINAL JUDGMENT IS ENTERED. SPRINT FAILED TO DO SO OR PROVE ANY AMOUNT OF DAMAGES OVER $38,758.75. THUS, AT BEST, SPRINT IS LIMITED TO ACTUAL DAMAGES PROOF.

ISSUE V: THE PERMANENT INJUNCTION ORDER SHOULD HAVE BEEN VACATED BECAUSE THE DISTRICT COURT LACKED JURISDICTION TO ENTER IT. FURTHER, THE GREAT WEIGHT OF THE EVIDENCE IS THAT SPRINT IS NOT LIKELY TO SUFFER IRREPARABLE INJURY AND THERE IS NO RISK OF CONFUSION.

# II. STATEMENT OF THE CASE AND FACTS

## A.    COURSE OF THE PROCEEDINGS AND DISPOSITION BELOW

Appellee Sprint Communications, Inc. ("Sprint") sued Nextel, Inc. d/b/a Nextel Worldwide and its co-owner Stephen Calabrese (neither appealed), along with

1

Appellants Retrobrands USA LLC, Nextel Mobile Worldwide, and Jeffrey Kaplan, Nextel Mobile and Retrobrands' principal and owner. DE80 at 6; DE192 at 14; DE292 at 57–58. In its operative First Amended Complaint, Sprint sued for counterfeiting and trademark infringement of the "NEXTEL" mark and "Sprint Chirp" mark under 15 U.S.C. §§ 1114, 1116; cybersquatting, trademark dilution, unfair competition and false designation of origin under 15 U.S.C. § 1125; and violations of Florida's Deceptive and Unfair Trade Practices Act, § 501.211, Fla. Stat. DE80. Sprint pled both statutory damages and actual damages. DE80 at 45.

Defendants responded with, pertinent here, abandonment and fraud affirmative defenses, and a claim of tortious interference. DE83 at 16–18. They also counterclaimed, seeking, *inter alia*, a declaration of non-infringement, unenforceability, and that any registration of the trademark should be cancelled due to Sprint's fraud. DE84 at 18–31.

Sprint denied it abandoned the NEXTEL Mark or NEXTEL-inclusive marks and asserted continuous use of both the NEXTEL Mark and Sprint Chirp. DE84 at 1–14.

Upon reconsideration of cross-motions for summary judgment, the district court ruled on Defendants' tortious interference counterclaim that whether Sprint's interference was unjustified or unprivileged was a jury question. DE120; DE122; DE222; DE235 at 6.

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

The April 11 jury trial ended April 18, 2022. DE292, 298, 321–26. Sprint stipulated it was not pursuing damages for the 1,637,**139** Nextel Mark, was dropping any claims regarding that Mark, and no evidence about that Mark would be presented. DE321 at 19–21.

At the close of Sprint's case, Defendants moved for entry of judgment as a matter of law ("JMOL") on infringement and abandonment of the 1,637,**139** Nextel Mark, the 5,037,**282** Sound Mark, and the 1,844,**244** Nextel Mark. DE321 at 27, 73–76.

Defendants' JMOL on the **'139** Nextel Mark was granted; no **'139** Mark claims were presented to the jury. DE321 at 73–76. JMOL on the **'282** Sound Mark and the **'244** Nextel Mark were denied. *Id*. Defendants unsuccessfully renewed their JMOL at the close of all evidence. DE326 at 99–100.

Defendants also individually moved for and were denied JMOL on Sprint's claims of infringement regarding the '282 Sound Mark. DE321 at 75. Defendants (except Nextel Inc.) moved for and were denied JMOL on the '244 Mark. DE321 at 76.

Sprint successfully moved for JMOL on Defendants claims for tortious interference. DE324 at 5. At the close of trial, Defendants moved for, also denied, reconsideration of Sprint's JMOL on Defendants' tortious interference counterclaims. DE302 at 1–9, DE325 at 2–4.

On April 18, 2022, the jury returned a verdict in Sprint's favor on its claims for trademark counterfeiting, trademark infringement, unfair competition, and false

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

designation of origin, trademark dilution, and cybersquatting as to the '**244** Nextel Mark and on claims for trademark counterfeiting, trademark infringement, and unfair competition and false designation of origin as to '**282** Sound Mark. DE309; DE 326 at 92–100. The jury also found in Sprint's favor on Defendants' counterclaim and affirmative defense of abandonment of the '**244** Nextel Mark. DE309.

The jury awarded Sprint $2,000,000 in statutory damages for trademark counterfeiting of the '**244** NEXTEL Mark, $2,000,000 for trademark counterfeiting the '**282** Sound Mark, and $500,000 in statutory damages for cybersquatting—totaling $4.5 million in statutory damages. DE309 at 1–8.

The jury also awarded actual damages (disgorgement of profits) of $2,000,000 for trademark infringement of the NEXTEL Mark, $2,000,000 for unfair competition and false designation of origin, $400,000 for trademark dilution, $400,000 for infringement of the Sound Mark, and $400,000 for trademark infringement of the NEXTEL Mark, totaling $5,200,000 in actual damages. DE309 at 1–8.

A Fed. R. Civ. P. 58 Final Judgment on the verdict was rendered April 22, 2022. DE310 at 1–2. Sprint was set to recover $9,700,000.00 in both statutory and actual damages. DE310 at 2. It reserved jurisdiction to tax costs, but made no reservation to consider a permanent injunction, and directed the clerk to close the case and deny all pending motions as moot. DE310 at 1–2.

After the jury was discharged, Sprint moved *ore tenus* for permanent injunction.

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

DE306 at 1; DE 326 at 99. The court instructed Sprint to "file something" and it would "sign it tomorrow." *Id.* On April 26, 2022, after Final Judgment was entered, Sprint filed its Motion for Entry of Permanent Injunction. DE313, 316, 320.

On May 19, 2022, Defendants timely filed their Omnibus Motion JNOV; Motion to Alter or Amend the Judgment; and Alternatively, Motion for a New Trial. DE327 at 1–28. Defendants asserted the Final Judgment should be amended to reflect Defendants prevailed on Sprint's '**139** Mark claims because Sprint dropped those. DE327 at 9–10. Defendants further asserted the evidence did not support the jury's findings of abandonment, fame of the NEXTEL Trademark, and cybersquatting. DE327 at 15–19. Finally, Defendants asserted they were entitled to judgment in their favor on their Counterclaims V and VI [DE327 at 23–25], and that the district court erred by excluding Jose Rivera's testimony. DE327 at 21–23.

Defendants also asserted the jury verdict award of $9,700,000.00 should be remitted to only actual damages shown by evidence presented—$38,758.75—or, alternatively, for a new trial on damages because Sprint was not entitled to duplicative damages and waived recovery of statutory damages by failing to elect them before entry of final judgment. DE327 at 9–15. Sprint agreed the jury verdict should be reduced to statutory damages in the amount of $4,500,000. DE335 at 8–9.

On July 19, 2022, Defendants' Omnibus Motion was granted and denied in part [DE352 at 1-6], concluding Sprint was entitled to statutory damages because its

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131   305-444-1599   800-216-6185
www.easleyappellate.com

pleading requested them. DE352 at 4. Final Judgment was amended, awarding Sprint $4,500,000.00 in statutory damages from Defendants, jointly and severally. DE352, DE353 at 2. The July 20, 2022, Amended Final Judgment, again, made no reservation of jurisdiction to entertain a permanent injunction and gave no indication of any remaining judicial labor. DE353 at 1–2. The Notice of Appeal was promptly amended the same day to include the Amended Final Judgment that presented all the indicia of finality. DE354.

On July 26, 2022, the district court entered a Permanent Injunction Order. DE356 at 1–5. It enjoins Defendants from committing any act of infringement, dilution, counterfeiting, cybersquatting, unfair competition, or deceptive trade practices concerning the common-law NEXTEL Mark or registered **'244** NEXTEL Mark, or the common-law Sound Mark or registered **'282** Sound Mark, and from implying a false designation of origin or a false description of representation with respect to Sprint, its predecessor in interest Nextel, or its successor in interest T-Mobile. DE356 at 6–7. Defendants are further enjoined from applying to register or registering the NEXTEL Mark or the Sound Mark, or any mark confusingly similar. DE356 at 6.

Defendants were also ordered to deliver to Sprint any goods or materials using or referencing Nextel within 30 days, to transfer to Sprint any domain names under their control within five days, and abandon all USPTO applications seeking to register marks confusingly similar to the NEXTEL or Sound Mark. DE356 at 8–9

Easley Appellate Practice, PLLC, 1200 Brickell Ave., Suite 1950, Miami, Florida 33131  305-444-1599  800-216-6185
www.easleyappellate.com

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

Appellants thereafter timely filed a Motion under Fed. R. Civ. P. 59(e) and 60(b) to Vacate the Permanent Injunction, to alter or amend the Permanent Injunction or to set it aside for lack of jurisdiction. Appellants also timely appealed the new Permanent Injunction to perfect appellate jurisdiction, both by a Second Amended Notice of Appeal and by an independent Notice of Appeal. DE368, 367. The appeal was held in abeyance until the district court resolved the Motion to Vacate.

The district court rendered a January 17, 2023, Omnibus Order on Defendants' Motion for Stay or, Alternatively, Motion for Extension of Time and Defendants' Motion to Vacate Permanent Injunction, denying all relief requested. DE385.

## B.    STANDARDS OF REVIEW

The constitutionality of a damage award is reviewed *de novo*. *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 962 (8th Cir. 2019). "The adequacy of monetary relief awarded under the Lanham Act is reviewed under the abuse of discretion standard." *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 744 (7th Cir. 1985).

The denial of a renewed JMOL motion is reviewed *de novo*. *Williams v. First Advantage LNS Screening Sols., Inc.*, 947 F.3d 735, 744 (11th Cir. 2020). And Denial of a motion for a new trial is reviewed for an abuse of discretion. *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 594 (11th Cir. 2019). Courts are instructed to grant new trials sought on an evidentiary basis when the jury verdict is against the great

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

weight of the evidence. *Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1515 (11th Cir. 1993). A motion for new trial is also warranted "when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001).

Trademark abandonment is a question of fact reviewed under the clearly erroneous standard. *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1516 n.12 (11th Cir. 1984). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court of "the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Williams*, 947 F.3d at 744.

A district court's entry of a permanent injunction, if it had jurisdiction to do so, is reviewed for an abuse of discretion, but underlying conclusions of law are reviewed *de novo*. *Pictet Overseas Inc. v. Helvetia Tr.*, 905 F.3d 1183, 1187 (11th Cir. 2018). An abuse of discretion occurs when a district court relies on a clearly erroneous finding of fact or an errant conclusion of law, or improperly applies the law to the facts. *Taylor*, 940 F.3d at 593.

## C.    STATEMENT OF FACTS

### 1.    *The trial evidence of Nextel's beginning and end*

**Nextel and Sprint are defunct.** Founded in the 1990s, NEXTEL was a cellular phone and wireless network brand that offered wireless telecommunications devices

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

and services with "push-to-talk" "walkie-talkie" features using iDEN network technology, which operated at 2G. DE80 at 7; DE83 at 21–22; DE192 at 13; DE298 at 83, 178; DE321 at 65; DE322 at 87.

Those devices used a "chirp" sound, universally called a Roger beep, commonly used in wireless equipment at the beginning or end of a broadcast segment to indicate the user is beginning or concluding speaking. DE298 at 48, 178. The devices were used by those in public-safety industries, such as first responders. DE80 at 7–8; DE298 at 135; DE322 at 28.

In 2005, Sprint purchased and merged with Nextel, operating for a few years as Sprint Nextel Corporation. DE83 at 20; DE84 at 2; DE192 at 12; DE298 at 186–87; DE322 at 16. Nextel entered that merger with about 55 trademarks—slogans, logos, and designs. DE323 at 104, 114.

Sprint immediately began formally abandoning 52 of those 55 trademarks. DE323 at 83; DE323 at 104, 114.

The remaining three NEXTEL marks are: (1) the '**139** Mark, [DE192 at 12], which Sprint formally discarded during this litigation [DE321 at 19–21, 73–74]; (2) the '**244** Mark,, first use August **1993**, for "Equipment used in providing telecommunications services; namely, mobile radios; namely, two-way radios, mobile telephones, dispatch radios, page[r]s and mobile data transceivers" [DE192 at 12; DE314-47 at 2–4] with a renewed registration in **2015 [**DE298 at 17–18, 193–94;

9

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

DE314-47 at 2–4]; and (3) the '**282** Sound Mark, first use in **1997**, but registered by

"Sprint Communications, Inc., on September 27, **2016**." DE192 at 12–13; DE314-48 at

2–4. The registration refers to a "sound" consisting of a tone at 1800 Hz played at a

cadence of 24 milliseconds (ms) ON, 24 ms OFF, 24 ms ON, 24 ms OFF, 48 ms ON.

DE314-48 at 3. While '**282** Sound Mark Registration references only a "Sound Mark,"

Sprint refers in this litigation to this sound—three beeps—as the "Nextel chirp."

Sprint claimed in this litigation its continuous uses of the above three NEXTEL

marks for "nearly the last thirty years." DE80 at 8. At trial, Sprint's evidence of

continuous use of the above remaining two Nextel Marks consisted of a sprinkling of

advertisements, a trade show, and non-Nextel devices. Sprint played a Super Bowl

advertisement from the year **2004**, before Sprint merged with Nextel in 2005, and

another commercial that aired sometime between **2006 and 2009** showing a Sprint

logo: "Together with Nextel." DE298 at 183–89; DE314-17–DE314-19; DE321 at 46.

Sprint also presented T-Mobile's director of marketing Thomas Shaughnessy.

Mr. Shaughnessy was unable to testify to a single Nextel advertisement **after 2009**.

DE321 at 46–47. Rather, he testified Sprint used the Nextel name to sponsor the

NASCAR Nextel Cup in **2007** [DE298 at 187]. He also testified to general Sprint

communications and advertising with the taglines, "Sprint together with Nextel" and

"Sprint Nextel" "after the merger." DE298 at 187–88.

The manifest weight of evidence was that, for more than fourteen years after

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

Sprint acquired Nextel, Sprint methodically and deliberately ceased all use of NEXTEL Marks and shuttered the Nextel-operating network. In **2008**, Sprint wrote off all Nextel's remaining goodwill. DE318-10 at 99–100; DE322 at 93; DE323 at 84–85. In **2012**, Sprint announced to the public at large it would be shutting down iDEN NEXTEL entirely by June 30, **2013**. DE83 at 20; DE84 at 3; DE318-10 at 99–100; DE318-11 at 1–2; DE322 at 93; DE323 at 84–85. Sprint encouraged its subscribers to switch to a non-Nextel network: Sprint's Direct Connect network. *Id.*

Brent Kohman, a Motorola Solutions senior manager of business operations and former manager of business-base retention for Sprint, testified Sprint shut down Nextel iDEN network entirely in **2013**, because consumers were switching over to data and broadband networks. DE298 at 68–70.

Sprint's SEC filings were also presented to the jury. DE322 at 15–16, 31–34. They showed, and Mr. Shaughnessy testified, Nextel saw a steep decline in subscribers and popularity and Sprint had moved away from the Nextel brand. *Id.*

Sprint then dropped "Nextel" from its name altogether. DE298 at 85.

The Nextel iDEN network was shut down and, Mr. Kohman explained, Sprint switched to selling "intrinsically safe devices"—devices that would not emit a spark when dropped or damaged—and Sprint push-to-talk used the Kodiak platform, integrated into the carrier's network (not the Nextel iDEN network) and provided priority service in times of disaster or congestion for police or firefighters. DE298 at 72,

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

78, 105.

Sprint also presented evidence of one booth at the **2017** International Wireless Communications Expo (IWCE), a trade show for critical communications technology for government, public safety, utilities, transportation, enterprise, professional services, and wireless dealers [DE192 at 13; DE298 at 74–75, 104], that mentioned Nextel on 1 slide in 1 PowerPoint presentation plaiying in the background about the history of the rugged devices, and the words "Together with Nextel" under Sprint's logo on one tablecloth and two placards promoting a tablet drawing. DE298 at 113–14, 116; DE314-6 at 1–9; DE314-11 at 2; DE322 at 100–01. That was **2017**. *Id.*

Brian Mancuso, a Sprint employee, confirmed no one can even purchase a Nextel plan today. DE322 at 93.

In 2020, Sprint merged with T-Mobile. DE292 at 55; DE298 at 76, 124, 132, 188. **T-Mobile became the surviving brand**. *Id.*

Mr. Shaughnessy testified T-Mobile didn't have a push-to-talk platform and was working with the Kodiak platform to integrate software into T-Mobile's network so it could continue to market Sprint's Direct Connect product line—not NEXTEL. DE321 at 28.

Also at trial, Sprint evidence of continuous use in commerce was **showing the jury devices other than Nextel**. One device, a CAT 2022 S22 flip phone and its box. DE292 at 12–15; DE298 at 125–26, 197; DE314-40 at 1–9. That device was not

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

launched until **2021**, years after NEXTEL had been discontinued. *Id.* "NEXTEL" appeared nowhere on the device. DE314-40 at 1–9. "NEXTEL" was printed nowhere on the box. *Id.* Instead, "NEXTEL" appeared in small font on a sticker randomly placed on the side of the box next to a no-trash symbol. DE314-40 at 1–9. Sprint also showed the jury a box and **another different device**, a CAT S62 "Rugged Smartphone." DE298 at 126–27, 197; DE314-41 at 1–9. Again, "NEXTEL" only appeared on a sticker placed randomly on that smartphone box next to a trashcan with an X. DE314-41 at 3.

Finally, Sprint showed the jury Sprint's Sonim XP Strike IS Intrinsically Safe device, which Mr. Shaughnessy stated was sold between **2013** through **2018**. DE321 at 29–30, 67; DE314-10 at 2–7. The back of that Sonim box and the back of the start-up guide stated in small print, "Nextel® Inspired." DE321 at 29–30, 67; DE314-10 at 2–7.

Sprint's IP legal counsel, Melissa Jobe, testified Sprint had sales of the Sonim XP Strike every year from **2013–2018.** DE323 at 89. Sprint was unable to provide and introduce into evidence of any records of such sales. **Sprint has never produced any records evidencing any such sales.** Ms. Jobe admitted that, as of **2018**, Sprint didn't sell a single product that used the customary Nextel products identified by an "i" followed by a three-digit number in connection with Nextel products sold by Defendants. DE323 at 77–78.

    *2. The trial testimony about Mr. Calabrese's attempt to revive the abandoned*

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES
*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

*brand.*

The jury heard testimony that, after Sprint completely shutdown Nextel and the iDEN network, Stephen Calabrese, not an appellant, decided to revive the brand. DE192 at 14; DE323 at 21–29. Mr. Calabrese was convicted of a felony in 2016 and sentenced to three years of supervised release. DE239 at 5. He didn't appear to testify at trial. He'd checked himself into a mental health facility in Boston and neither Sprint nor Appellants could locate him. DE290 at 8–12. His deposition was read to the jury. After conclusion of his testimony, the jury was informed of his conviction. DE324 at 44–49.

Mr. Calabrese testified in deposition he attempted to purchase a Nextel device, was told the device was no longer sold, and was referred to Sprint's Direct Connect application instead. DE323 at 37–39. He incorporated and registered Nextel, Inc., operating as Nextel Worldwide, in October 2016. DE80 at 10; DE84 at 5; DE323 at 19–20. On his own, he filed an application to register the mark NEXTEL with the USPTO, which he later withdrew [DE80 at 10; DE323 at 118], and his company registered the domain nextelworldwide.com. DE192 at 13–14.

In April **2017**, Nextel Worldwide and Mr. Calabrese began selling NEXTEL-branded wireless devices and related services to telecommunications dealers, distributors, and end-users. DE192 at 14; DE323 at 21–29. He explained he ordered the devices from a number of manufacturers and placed a SIM card in the device and Nextel sticker on the device. DE323 at 22–28. By then, Nextel Worldwide had sold a

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

few hundred such devices. DE323 at 29.

Also in April **2017**, Mr. Calabrese's Nextel Worldwide attended the IWCE trade show. DE192 at 13; DE298 at 74–75, 104. Mr. Calabrese set up a NEXTEL-branded booth offering NEXTEL-branded wireless devices and related services from Nextel Worldwide. DE192 at 13; DE298 at 74–75.

Sprint's witnesses testified they attended and learned of Mr. Calabrese and Nextel Worldwide at that same trade show. DE298 at 75–76, 112, 116, 127–28; DE314-11 at 2. Sprint had a booth offering wireless devices and related services. DE192 at 13. **Sprint was offering no devices and services under the NEXTEL brand.** *Id.*

In April 2017, Sprint sent a cease-and-desist letter to Nextel Worldwide and demanded it cease using Sprint's claimed NEXTEL trademarks. DE192 at 14; DE84 at 5; DE323 at 81–82; DE314-33 at 1–2. On October 26, 2017, Mr. Calabrese's lawyer sent an email to Sprint's in-house lawyer stating Nextel Worldwide would stop using the NEXTEL Mark. DE292 at 7–10; DE314-36. On February 8, 2019, Mr. Calabrese's lawyer sent another email to Sprint outside counsel stating Nextel Worldwide had stopped and Sprint could close its file. DE292 at 7–10; DE314-36 at 1.

> 3. *The trial testimony was also that, after a full investigation, Mr. Kaplan determined Sprint had abandoned the NEXTEL Marks, so he began to revive the discarded brand.*

Appellant Jeffrey Kaplan has decades of experience as an entrepreneur, an

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

inventor, and in trademarks. DE323 at 92–98. In 2012, he founded Retrobrands USA, which has successfully revived numerous discarded and abandoned brands. DE292 at 58–59; DE298 at 57; DE323 at 94–99. Before selecting brands to revive, Mr. Kaplan personally conducts research and extensive work to ensure brands are truly "abandoned." DE292 at 59; DE323 at 97.

In early January 2018, Mr. Kaplan received a call from Mr. Calabrese, inviting him to his office, where Mr. Kaplan met Mr. Calabrese and Jose Rivera, a co-owner in Mr. Calabrese's Nextel Worldwide. DE192 at 13; DE323 at 19–20, 101–02. They showed Mr. Kaplan the Nextel-branded products they produced and explained Sprint had discontinued the Nextel brand and, because they couldn't find it anywhere, they launched it at a trade show in 2017. DE323 at 101; DE192 at 14; DE298 at 18–20.

Mr. Calabrese informed Mr. Kaplan of Sprint's objections to Nextel Worldwide's use of the NEXTEL mark. DE192 at 14; DE298 at 18–20; DE321 at 72. Mr. Kaplan then conducted his own investigation to confirm Sprint had abandoned Nextel. DE323 at 102–03.

As part of this investigation, Mr. Kaplan visited multiple Sprint stores and asked specifically for Nextel devices. DE323 at 102–03. Not one Sprint associate knew what a "Nextel" was. DE323 at 102–03.

Mr. Kaplan further researched Sprint websites, the USPTO website, the Nextel history and background, looking for anything to locate any sales of Nextel devices and

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

Nextel airtime.  DE292 at 60; DE298 at 13–17, 50–51; DE323 at 103–04. He found nothing. *Id.*

Mr. Kaplan also observed, while he found a few live trademarks remaining, they had been abandoned and nextel.com was not working. DE298 at 17–18, 50–51; DE323 at 103–04. When Mr. Kaplan searched for Nextel on the Sprint website, nothing appeared. DE298 at 51; DE323 at 103–04.

On Sprint's website Mr. Kaplan found, instead, numerous articles about Nextel's history and it had been discontinued. DE323 at 103.

Mr. Kaplan also studied Sprint's annual reports and discovered, before 2013, the Nextel brand was mentioned in their filings with the SEC, some of the post-2013 filings made no mention of Nextel, and Sprint had written off all goodwill of Nextel in 2008. DE298 at 51; 62; DE323 at 105–106; DE318-8 at 1–150; DE318-9 at 1–142; DE318-10 at 1–131; DE318-13 at 1–213; DE318-12 at 1–216; DE318-14 at 1–187; DE318-15 at 1–209; DE318-26.

Relying on Sprint's own statements to the general public that it was shutting down Nextel in 2013, and Sprint's own financial disclosures, website closure, goodwill write-offs, cancellation of trademark registrations, and public discontinuation of all NEXTEL products and services, Mr. Kaplan concluded Sprint had abandoned the Nextel brand and Marks with no intent to resume use. DE323 at 106.

On that good-faith belief and understanding the Mark had fallen into the public

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

domain, Mr. Kaplan decided to adopt a NEXTEL trademark and he entered into a licensing agreement with Mr. Calabrese and Nextel Worldwide. DE323 at 108.

In 2018, Mr. Kaplan also founded Nextel Mobile Worldwide as a holding company. DE292 at 58; DE323 at 109. Appellants labored to develop a network of distributors across the country. DE323 at 107–09. The network started to generate some revenue for the distributors and for Appellants. DE323 at 107–09.

Mr. Kaplan also described to the jury the public relaunch of Nextel through press releases, websites, and social media. DE298 at 25–40; DE323 at 92–119. Appellants, genuinely believing Nextel to be abandoned, never attempted to hide they were using the Nextel mark. DE298 at 25–40; DE322 at 108–09.

On January 29, 2018, after completing his investigation, Retrobrands submitted its application to register the NEXTEL Mark. DE298 at 24–25; DE314-22 at 1–7. One week later, Retrobrands issued a press release to relaunch the Nextel brand. DE298 at 25; DE86 at 1. On January 30, 2018, Retrobrands entered into a licensing agreement with Nextel Inc. to relaunch and rebrand Nextel. DE298 at 29; DE314-9 at 1-19;D E323 at 108.

On March 12, 2018, the USPTO refused Retrobrands' registration application on the basis of likelihood of confusion. DE298 at 29; DE314-23 at 2–3. Retrobrands also submitted trademark applications for the "NEXTEL Chirp" and a sound mark. DE298 at 45–50. The applications were suspended with this litigation. DE298 at 50.

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES
*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

In August 2018, Retrobrands registered the domains nextelisback.com, getnextel.com. DE192 at 14; DE298 at 31–32; DE321 at 69–70. These redirected to nextelmobileworldwide.com, more of an informational site than for sales. DE192 at 14; DE298 at 57, 159. The websites all disclosed to the public they were not authorized by or associated with Sprint. DE298 at 57. All remaining pertinent facts are set forth in Arguments.

<h2 style="text-align:center">ARGUMENTS SUMMARY</h2>

The great weight of the substantial, competent evidence presented at trial is, faced with declining sales and obsolete technology, Sprint wrote off the goodwill of NEXTEL and ceased all use of the NEXTEL Marks in commerce for at least three years. Sprint's attempts to warehouse the NEXTEL Marks through placing them on stickers and then the stickers onto CAT devices and by referencing the history of the now-defunct Nextel brand. That's not legally competent evidence of "use in commerce" and of an actual intent to resume use.

Having closed Nextel and abandoned the NEXTEL Marks, Sprint had no standing. There was no actual or imminent concrete injury to either Sprint or T-Mobile. And, because Sprint wrote off the Marks' goodwill long ago, it had nothing to transfer to T-Mobile; thus, T-Mobile also lacked standing. Where the great weight of the only competent evidence was Sprint quit using NEXTEL, no objective evidence of use of the Marks in commerce, and no objective evidence of an intent to resume use, the jury's

19

*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

verdict that Sprint did not abandon the NEXTEL Marks was clearly erroneous.

Further, the only evidence—from Sprint's own witnesses—was that Nextel was at best a niche brand marketed to a select few in a narrow public-service industry. Because the Trademark Dilution Revision Act requires more than niche fame, denial of Appellants' Motion JNOV was error.

Even if the district court's Amended Final Judgment is not reversed entirely, damages must be reduced or a new trial on damages granted. While the only evidence of any arguable damages was $38,758.75, Sprint was awarded $4.5 million in statutory damages. Sprint was required to elect statutory damages before final judgment was entered. It didn't. Sprint is limited to actual damages.

The Permanent Injunction entered post-notice-of-appeal should be vacated. The district court lost jurisdiction to enter it upon entering Final Judgment and Amended Final Judgment without reserving jurisdiction to do so. The great weight of the competent evidence is Sprint suffers no irreparable injury and no risk of confusion. T-Mobile doesn't even sell Nextel devices or services. And there's no objective evidence of an actual intent to do so.

## ARGUMENTS

### ISSUE I: THE SUIT SHOULD BE DISMISSED FOR LACK OF STANDING. THERE HAS BEEN NO ACTUAL OR IMMINENT CONCRETE INJURY TO SPRINT (OR T-MOBILE). AND, BECAUSE THERE WAS NO GOODWILL LEFT IN THE ABANDONED NEXTEL MARKS, SPRINT COULD NOT HAVE TRANSFERRED ANY TRADEMARK RIGHTS TO T-MOBILE.

20

Standing for lack of subject-matter jurisdiction may be considered at any time during litigation. Fed. R. Civ. Proc. 12(h)(3); *see also Gould Elecs., Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). Standing is an Article III, federal jurisdiction prerequisite. *Id.* Sprint must have suffered "'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 559. There must also be a causal connection between the injury and the conduct complained of. *Id.* And "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* If subject-matter jurisdiction is lacking, the suit must be dismissed. Fed. R. Civ. P. 12(h)(3).

**Sprint lacks standing.** It has not and will not suffer an injury in fact of the type Congress sought to redress in the Lanham Act or Anticybersquatting Consumer Protection Act. *See Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1331 (11th Cir. 2008). Sprint no longer sells Nextel devices, operates the platform, or promotes Nextel devices or push-to-talk technology, any commercial or competitive injury to Sprint is legal impossibility. DE83 at 20–21; DE84 at 3; DE318-10 at 99–100; DE318-11 at 1–2; DE321 at 28; DE322 at 93; DE323 at 77–78, 84–85. Sprint dropped Nextel from its name, dismantled nextel.com, and announced to the public-at-large

*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

Nextel was shutting down. DE298 at 85; *see Nat. Answers*, 529 F.3d at 1331 (no injury where no longer selling or promoting product at time of alleged injury). Further, because Sprint wrote off the goodwill [DE298 at 51; 62; DE323 at 105–106], the Nextel marks had no goodwill remaining and, therefore, no goodwill lost. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).

**Second, Sprint must've had standing at all stages of the litigation**. *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). It did not. "[I]f developments occurring during the course of adjudication eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the case as moot." *Rosetti v. Shalala*, 12 F.3d 1216, 1224 (3d Cir. 1993); *see United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019). During the litigation, Sprint merged with T-Mobile, through which T-Mobile became the surviving brand and Sprint was dismantled, just as Sprint dismantled Nextel years earlier. DE292 at 55; DE298 at 76, 124, 132, 188.

After Sprint stopped selling Nextel devices, shut down its network, and wrote off Nextel's goodwill, it had no goodwill appurtenant to any of the Nextel marks and, with no ability to convey goodwill, any subsequent assignment of them to T-Mobile was ineffectual. Before a trademark assignee stands in the shoes of the trademark owner and takes on the registrant's ability to sue an infringer, the mark must have been validly assigned. 15 U.S.C. §1127. A valid trademark assignment is one that includes transfer of goodwill symbolized by the mark. 15 U.S.C.S. § 1060. Without goodwill, the

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

assignment is a nullity. *See id.*; *Nat'l Min. Co. v. Bourjois, Inc.*, 62 F.2d 1, 4 (7th Cir. 1932).

Once Sprint stopped selling Nextel devices, shut down the network, and wrote off Nextel's goodwill, it had no Nextel goodwill to effectively assign to T-Mobile. *See Lazar v. Cecelia Co.*, 30 F. Supp. 769, 771 (S.D.N.Y. 1939); *W. H. Childs & Son v. G. Sidenberg & Co.*, 11 F.2d 463 (D.C. Cir. 1926) (no standing because no good will remained when registration was assigned to plaintiff). When, as here, a mark hasn't been continuously used in commerce, there's no goodwill to transfer. *Mister Donut of Am., Inc. v. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir. 1969) (no goodwill to assign when assignor ceased doing business four years earlier), *overruled on other grounds*, *Golden Door, Inc. v. Odisho*, 646 F.2d 347 (9th Cir. 1980); *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1090 (C.D. Cal. 2006) (no evidence of use of mark in two years before assignment is lack of evidence of any transferrable goodwill).

Sprint not only wrote off Nextel's goodwill, but the manifest weight of the competent, objective evidence was it abandoned the Nextel Marks. *See also* Issues II and III, *infra*. Stuck with obsolete, retired technology, Sprint intentionally shut down Nextel in **2013**, dropped from Sprint any reference to Nextel, and asked its customers to switch to Sprint Direct Connect. DE83 at 20–21; DE84 at 3; DE298 at 68–78, 105; DE318-11 at 1–2; DE321 at 28; DE322 at 29–30, 92.  All occurring ***seven years before*** T-Mobile acquired Sprint. Sprint offered no objective evidence of any plans to use

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

Nextel in commerce in the future. Because Sprint neither suffered injury-in-fact per the Lanham Act, nor had any goodwill to transfer to T-Mobile, the suit should be dismissed for lack of standing.

**ISSUE II: THE GREAT WEIGHT OF THE EVIDENCE IS THIS: SPRINT STOPPED USING THE NEXTEL MARKS IN COMMERCE WITH NO OBJECTIVE EVIDENCE OF INTENT TO RESUME USE IN COMMERCE. THUS, SPRINT ABANDONED THE NEXTEL MARKS. THE JURY'S FINDING OTHERWISE IS CLEARLY ERRONEOUS AND DENIAL OF APPELLANTS' MOTION JNOV WAS ERROR.**

"Trademark ownership is always appurtenant to commercial activity." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989) (per curiam). If a mark holder stops using a mark in commerce without intent to resume its use, the mark is deemed abandoned and "falls into the public domain and is free for all to use." *Cumulus Media, Inc. v. Clear Channel Communs., Inc.*, 304 F.3d 1167, 1173 (11th Cir. 2002). "Thus, a defendant who successfully shows that a trademark plaintiff has abandoned a mark is free to use the mark without liability to the plaintiff." *Id.*

Under the Lanham Act, a trademark is deemed abandoned, thus invalid, "[w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127; *see also Cumulus*, 304 F.3d at 1173; *Tally-Ho*, 889 F.2d at 1022. To show a plaintiff has abandoned his trademark, a defendant must show: "[1] that the plaintiff has ceased using the mark in dispute and [2] that he has done so with an intent not to resume its use." *Cumulus*, 304 F.3d at 1174 (footnote omitted). But "[n]onuse for three consecutive years shall be prima facie evidence of abandonment," 15 U.S.C. §

24

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

1127, creating a mandatory "rebuttable presumption of intent not to resume use." *Id.*

The overwhelming, competent evidence is Sprint has been simply **warehousing.** Warehousing—use merely to prevent others from using the mark—is not a bona fide Lanham Act "use". 15 U.S.C. § 1127; *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000); *see also Nat. Answers,* 529 F.3d at 1330.

The Lanham Act also requires any professed intent to resume use must be in the reasonably foreseeable future. *Nat. Answers*, 529 F.3d at 1329. The mark owner must do more than simply assert a vague, unsubstantiated intent at some unspecified time in the future. *See id.*; *Emergency One*, 228 F.3d at 536. It must have formulated the intent to resume use of its mark during the three-year period of nonuse that triggered the statutory presumption of abandonment. *See, e.g.*, *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 149 n.9 (2d Cir. 2007); *Specht v. Google Inc.*, 747 F.3d 929, 934 (7th Cir. 2014).

Once abandoned, subsequent use, like Sprint's unsubstantiated professed future use here, does not cure abandonment retroactively. *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1550 (11th Cir. 1986) (registration canceled abandonment: "[t]hat Kraft used the mark in 1980 does not mean that Kraft intended to use the mark in 1978"); *Specht*, 747 F.3d at 934 (having established use ceased in 2002, court disregarded evidence of mass mailing in 2007).

Sprint's objective evidence of abandonment outweighed Sprint's self-serving testimony that there was no intent to abandon the mark. *See Nat. Answers*, 529 F.3d at

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131   305-444-1599   800-216-6185
www.easleyappellate.com

*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

1329 (subjective assertions not "evidence of actual and concrete plans to resume use in the reasonably foreseeable future"); *Hiland Potato Chip Co. v. Culbro Snack Foods, Inc.*, 720 F.2d 981, 983 (8th Cir. 1983). "If all a party had to do to avoid a holding of abandonment was to testify that he never had any intent to abandon the mark, then no mark would ever be held abandoned." *Id.* (quoting McCarthy, *Trademarks and Unfair Competition,* Vol 1, § 17:3C (1973)).

The competent, objective trial evidence was that, over the course of **more than 14 years**, Sprint methodically, deliberately, and publicly shut down Nextel and ceased all use of NEXTEL marks. In 2012, Sprint publicly and incontrovertibly announced it was shutting down iDEN NEXTEL by June 30, 2013, which it did, and encouraged its subscribers to switch to Sprint's Direct Connect network. DE83 at 20–21; DE84 at 3; DE298 at 70–71; DE318-11 at 1–21; DE322 at 29–30, 92. Sprint ultimately abandoned 52 of its 55 Nextel-related trademarks. DE323 at 83; DE323 at 104, 114. Sprint then dropped Nextel from its name entirely, returning to Sprint Corp. [DE298 at 85] and shut down the Nextel website. DE292 at 60.

The evidence was also that no one has been able to purchase a Nextel plan ever since, which Sprint's own Mr. Mancuso confirmed. DE321 at 28; DE322 at 93. T-Mobile doesn't even have a Nextel push-to-talk platform; the only testimony was it was working on integrating such software into its network so it could sell Sprint's Direct Connect Line—**not Nextel**. DE321 at 28.

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

Mr. Kaplan and Mr. Calabrese also attempted to buy Nextel devices but never could. DE298 at 18–20; DE323 at 101–03. And, most tellingly, **Sprint provided zero evidence of Nextel device sales. Not one invoice, receipt, or customer order**.

Sprint's announcement to the general public that these Marks were not to be used in the future was the strongest evidence of its intent to abandon. *See Hiland Potato Chip*, 720 F.2d at 983. In *Hiland Potato Chip Co.*, that company sent a communication to thousands of distributors and customers stating its Kitty Clover brand of potato chips would be discontinued and another brand name would be substituted. *Id.* at 982–83. That company began selling a different brand of potato chips, making no sales of Kitty Clover chips. *Id.* The Eighth Circuit Court of Appeals held this constituted abandonment of mark. *Id.* at 983–84.

Additionally, Sprint's own evidence was it had already written off any remaining goodwill of Nextel in **2008**. DE318 at 99–100; DE322 at 13–15, 93. Once the goodwill in a mark disappeared by non-use of the businesses symbolized by the mark, as here, the mark was no longer protectable: there was no goodwill left to protect. *See MB Fin. Bank, N.A. v. MB Real Estate Servs., L.L.C.*, No. 02 C 5925, 2003 U.S. Dist. LEXIS 10578, at *29 (N.D. Ill. June 20, 2003) (abandonment where mark owner conducted extensive and expensive advertising campaign to promote new marks after a merger, which "left little goodwill in the original … logo") (discussing *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 670 (7th Cir. 2001) and 2 McCarthy § 17:14)).

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131   305-444-1599   800-216-6185
www.easleyappellate.com

*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

Sprint's purported evidence of use was not Lanham-Act competent evidence of use of the Nextel marks in commerce, but a caricature. In *Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 497 (7th Cir. 2019), for example, the Seventh Circuit Court of Appeals held a district court properly excluded evidence of patents that did not have any of the features that comprised the claimed trade dress of the subject French press coffee maker. Permitting the jury to view and consider the patents would have caused confusion over the appropriate inquiry for functionality. *Id.* The same here.

Over Appellants' objections [DE292 at 12–15], Sprint showed the jury a Sonim—**not Nextel**— phone box with a 2013 copyright date, already after Nextel had been shut down, and of the just-released CAT® S22 flip phone and CAT® S62 rugged smartphone—again not Nextel—both with a 2021 copyright date and "Nextel" sticker attached onto the sides of boxes next to a no-trash symbol. DE292 at 12–15; DE298 at 125–27, 197; DE314-40 at 1–9; DE322 at 86. They were CAT devices, branded, labeled, and marketed as such. DE314-40 at 1–9; DE314-40 at 1–9; *see also In re Remington Prods.*, 1987 TTAB LEXIS 91, *3, 3 U.S.P.Q.2D (BNA) 1714, 1715 (Trademark Trial & App. Bd. January 29, 1987) ("Proudly Made in USA" is merely an informational phrase). Further underscoring this incompetent evidence, Ms. Jobe admitted the Sonim phone was not even available in retail stores or to the public through Sprint's website. DE323 at 63. Sprint presented no evidence of (a) where the stickers came from and (b) whether they were continuously used in commerce on these

28

CAT devices or in commerce at all.

Even if attaching stickers to other **non**-NEXTEL phones could be considered "use" (it's not), Sprint presented no evidence of use between **2013 and 2021**—*8 years*. As new devices, these Exhibits had no probative value to show whether Sprint continued to use the NEXTEL Mark. The jury's finding continuous use in commerce was against the presumption and overwhelming evidence of Sprint's actual abandonment.

For a mark to be "used in commerce" on goods it is insufficient to point to a sticker placed on the side of a box, for a different phone, on a different network. It must be "placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale." 15 U.S.C. § 1127; *see In re JobDiva, Inc.*, 843 F.3d 936, 940 (Fed. Cir. 2016) (registration may be abandoned even though underlying mark "used" but not for the goods identified).

"Neither promotional use of the mark on goods in a different course of trade nor mere token use constitute 'use' under the Lanham Act." *Emergency One*, 228 F.3d at 536; *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195-96 (11th Cir. 2001) (collecting cases). Sprint presented Mr. Shaughnessy to testify about advertisements—*one* Super Bowl ad from *18 years prior* and *one* Sprint commercial

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES
*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

mentioning Nextel airing sometime between *2006 and 2009*. DE298 at 183, 185, 187, 189–90; DE314-17; DE321 at 46. Mr. Shaughnessy couldn't testify to *one* Sprint *"use" of Nextel* in even one advertisement *after 2009*. DE321 at 46.

Sprint's witnesses could only testify about a token appearance of Nextel on a few items on Sprint's booth at a 2017 IWCE tradeshow in reference to the company's history on one single slide of a PowerPoint presentation, playing in the background, with "Together with Nextel" in small font, under Sprint's logo, on a tablecloth, and two placards promoting a tablet drawing. DE298 at 113–14, 116; DE314-6 at 1–9; DE314-11 at 2; DE322 at 100–01; *see Remington Prodsat* at *3. That's not Lanham-Act "use".

The Nextel "chirp" was, similarly, used on promotional materials only in reference to the company's history, such as on the "battle card" that the business salespeople use and on a PowerPoint. DE298 at 120–23. This Court holds that Sprint's kind of evidence of "use" is insufficient when, as here, "only a few presentations [of the promotional materials] were made." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1196 (11th Cir. 2001) (citing *WarnerVision Entm't Inc. v. Empire of Carolina Inc.*, 915 F. Supp. 639, 645-46 (S.D.N.Y. 1996)). Not a single NEXTEL device was introduced into evidence, which produced the Nextel "chirp" sound.

In *Specht v. Google Inc.*, 747 F.3d 929, 934 (7th Cir. 2014), the Seventh Circuit held plaintiff's evidence consisting of a website bearing the trademark to show "use in commerce" was insufficient where, like here, no goods or services were provided in

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

Return to Table of Contents
Return to Table of Authorities
*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

connection with the website. *Id.* A mass mailing and failed bid to license software were merely two isolated efforts and not "use in commerce." *Id.*; *see also Silverman*, 870 F.2d 40, 47–48 (sporadic licensing of mark for non-commercial purposes not "use"); *Exxon Corp. v. Humble Expl. Co.*, 695 F.2d 96, 99–102 (5th Cir. 1983) (token sales of small quantities of goods with "Humble" trademark to selected purchasers who knew that they were receiving Exxon merchandise not "uses" in commerce).

*American Photographic Pub. Co. v. Ziff-Davis Pub. Co.*, 135 F.2d 569 (7th Cir. 1943), also compellingly illustrates this point, where the title of a monthly magazine, Popular Photography, was discontinued and the publication was combined into another magazine, American Photography. The successor magazine continued for twenty years to carry the statement "American Photography incorporating Popular Photography." *Id.* at 573. The Seventh Circuit held the magazine's discontinuance was strong evidence of abandonment and the statement in the successor magazine was no more than a description of Popular Photography's history. *Id* at 572. Thus, a third party was permitted to use Popular Photography as a magazine title. *Id.* The same evidence compels the same finding here.

Sprint's evidence to the jury was Sprint's Sonim XP Strike IS Intrinsically Safe device and a "Nextel® Inspired" statement. DE321 at 29; DE314-10 at 2–7. Mr. Shaughnessy's testimony Sprint introduced this Sonim product in 2013 and sold that different product at least through 2018 [DE321 at 30, 67] only showed the use of *Nextel*

31

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

was descriptive of the company's history. *American Photographic*, *supra.* Mr. Mancuso, likewise, could only testify he knew the Nextel name and Sprint used it in its "history when speaking with customers in our history and how we use it." DE322 at 85, 108.

These facts are just like *American Photographic*: "Like epitaphs on the tombstones in the family burial plot, they reflect an honored past; but their present function is merely to describe the history and background of" Sprint. 135 F.2d at 572.

Sprint also failed to present competent, objective evidence of an intent to resume any use of Nextel in those years. Sprint presented no business records on topics such as market research, product development, network development, negotiations, or any other discussions relevant to continuing or resuming use. Sprint's evidence only showed its efforts to promote Sprint's network and intrinsically safe devices *instead of* Nextel. DE292 at 55; DE298 at 72–78, 105, 124, 132, 188; DE321 at 28; DE322 at 85, 93, 101, 108. **No evidence of Nextel goods or services was introduced.**

What the manifest weight of the evidence showed was nothing more than a concerted effort to hoard and warehouse with no intent to resume use in any foreseeable future. As such, it was error to deny judgment for Appellants or a new trial on Sprint's claims for trademark counterfeiting, trademark infringement under the Lanham Act, Florida common law, the FDUTPA, federal unfair competition and false designation of origin, trademark dilution, and cybersquatting with the respect to the '244 Mark and

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

USCA11 Case: 22-11717    Document: 44    Date Filed: 02/14/2023    Page: 58 of 78
RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

'282 Mark.

And because Sprint did not present competent evidence overcoming the presumption of abandonment of Nextel, judgment should also be entered or a new trial granted on Sprint's cybersquatting claim. Under the Anticybersquatting Consumer Protection Act, one shall be "liable in a civil action by the owner of a mark . . . if . . . that person . . . has a bad faith intent to profit from that mark . . . and registers, traffics in, or uses a domain name that . . . in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark . . . ." 15 U.S.C. § 1125(d)(1)(A)(i)-(ii); *Pensacola Motor Sales, Inc. v. E. Shore Toyota, Ltd. Liab. Co.*, 684 F.3d 1211, 1221 (11th Cir. 2012). The Act provides a safe-harbor defense, stating that "[b]ad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." *Id.* § 1125(d)(1)(B)(ii). *Pensacola Motor*, 684 F.3d at 1221.

As detailed above, Appellants reasonably believed their use of Nextel in the domain names was fair and lawful. *See Micromuse, Inc. v. Micromuse, Plc.*, 304 F. Supp. 2d 202, 217–18 (D. Mass. 2004) (no claim for cybersquatting where plaintiff abandoned mark). Therefore, it was error to deny judgment or new trial in favor of Appellants on Sprint's cybersquatting claim. DE327 at 12–13; DE324 at 35–36.

ISSUE III: DILUTION REQUIRES A MARK BE SO FAMOUS THAT IT IS WIDELY KNOWN BY

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES
*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

THE GENERAL PUBLIC. BUT THE ONLY EVIDENCE—EVEN FROM SPRINT'S OWN WITNESSES—WAS NEXTEL IS AT MOST A NICHE BRAND IN A NARROW PUBLIC-SERVICE INDUSTRY. THUS, DENIAL OF APPELLANTS' MOTION JNOV WAS ERROR.

Sprint introduced no evidence to meet its burden that its marks were famous that even suggested the degree of recognition required by law. "Dilution is a cause of action reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999), *superseded by statute on other grounds recognized in*, Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., 778 F. Supp. 2d 726, 747 n.29 (N.D. Tex. 2011). "A threshold question in a federal dilution claim is whether the mark at issue is 'famous.'" *Coach Servs. v. Triumph Learning LLC*, 668 F.3d 1356, 1372 (Fed. Cir. 2012).

Under the Trademark Dilution Revision Act of 2006 ("TDRA"), a mark is famous if it "is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C.S. § 1125(c)(2)(A). Fame in the context of dilution requires a more stringent showing than in the context of likelihood-of-confusion and is notoriously more difficult to prove. *Coach Servs.*, 668 F.3d at 1372, 1374.

For the "famousness" element, "a mark must be truly prominent and renowned." *Sumpton*, 189 F.3d at 875. Dilution protection extends only to those whose mark is a

"household name." *Thane,* 305 F.3d at 911. The TDRA provides four factors to determine whether a mark is famous and when protection is denied to marks that are famous in only "niche" markets. *See* House Report on Trademark Dilution Act of 2005 at 8, 25; *see also Top Tobacco, L.P. v. N. Atl. Operating Co.,* 509 F.3d 380, 384 (7th Cir. 2007) (reference to general public "eliminated any possibility of 'niche fame,' which some courts had recognized before the amendment").

**Sprint failed to show Nextel has anything more than niche fame**. In *Thane Int'l v. Trek Bicycle Corp.,* 305 F.3d 894 (9th Cir. 2002), the Ninth Circuit Court of Appeals held that Trek Bicycle Corp. failed to establish as a matter of law that its TREK had "household-name fame even though the mark was registered, Trek spent between $3 million and $5 million per year on advertising, including in mainstream publications, had around 4.5 million visitors to its website every year, made over 1,000 different products that were sold by over 1,600 independent dealers in 2,000 locations across the nation, and sponsored cycling superstar Lance Armstrong." *Id.* at 899, 912.

Applying the *Thane* standard, the Ninth Circuit in *Blumenthal Distrib., Inc. v. Herman Miller, Inc.,* 963 F.3d 859, 871 (9th Cir. 2020), held the evidence was legally insufficient to find that Herman Miller's EAMES trade dresses were famous and reversed judgment in favor of Herman Miller for dilution. The evidence was that Herman Miller spent an average of $550,000 per year on advertising Eames chairs, which appeared in obscure and industry publications, were sold through a distribution

channel consisting of around 45 independently owned dealers with 130 locations, and had been featured in TV shows and movies, and appeared in museum exhibits. *Id.*

Even more compelling than *Thane* and *Blumenthal*'s much more robust body of evidence, Sprint introduced no evidence to meet its burden that its marks were famous to even suggest a degree of recognition the TDRA required. No evidence of any records of sales of Nextel-branded devices. No actual amounts spent on marketing. No actual sources. No reach of marketing evidence. Nothing.

Worse, Sprint's witnesses admitted Nextel was, on its best day, a niche brand, marketed to a niche industry. Mr. Wiley testified Nextel was "a sub-brand that we use to market our push-to-talk services" and a "niche brand on push-to-talk devices." DE298 at 135. The devices are not sold in stores or online to the general public. DE298 at 110–11.

Mr. Kohman admitted the push-to-talk segment of the cellphone industry was "a very, very, very narrow band," and "a smaller part of the market geared to business generally," and "specifically geared to firefighters." DE298 at 86.

Mr. Shaughnessy admitted Nextel was a sub-brand in Sprint's business-focus category. DE322 at 9. Nextel is not a consumer-facing brand; the devices are not marketed to the public. DE298 at 135, 191-92; DE298 at 69, 73 119; DE323 at 63. JNOV should have been granted in Appellants' favor on Sprint's claim for trademark dilution.

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES
*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

**ISSUE IV: THE LANHAM ACT REQUIRES A PLAINTIFF TO ELECT STATUTORY DAMAGES BEFORE FINAL JUDGMENT IS ENTERED. SPRINT FAILED TO DO SO OR PROVE ANY AMOUNT OF DAMAGES OVER $38,758.75. THUS, AT BEST, SPRINT IS LIMITED TO ACTUAL DAMAGES PROOF.**

**A.     SPRINT FAILED TO ELECT STATUTORY DAMAGES BEFORE FINAL JUDGMENT WAS ENTERED, AS REQUIRED BY THE LANHAM ACT.**

A plaintiff suing under the Lanham Act and ACPA may, *before final judgment*, elect to recover statutory damages instead of actual damages (and profits under the Lanham Act). 15 U.S.C. § 111(7)(c), (d); 15 U.S.C.S. § 1125(d). Statutory damages under the Lanham Act range from $100 to $200,000 per counterfeit mark per type of goods or services; if use of the counterfeit mark is willful, up to $2 million per mark for each type of goods or services may be awarded. 15 U.S.C. § 1117(c)(2). Statutory damages under the ACPA range between $1000 and $100,000 per domain name. 15 U.S.C. § 1125(d).[2]

Because a prevailing plaintiff may not recover both actual and statutory damages—statutory damages "instead of actual damages and profits"—it may elect statutory damages or be stuck with actual damages if the plaintiff doesn't elect before final judgment. 15 U.S.C.S. § 1117; *Gabbanelli Accordions & Imps., L.L.C. v. Ditta*

---

[2] The ACPA statutory damages language is nearly identical to the parallel provision in the counterfeiting section of the Lanham Act, which in turn tracks the language of the Copyright Act. 15 U.S.C. § 111(7)(c), (d); 15 U.S.C.S. § 1125(d). Courts often look for guidance to the better developed case law under the Copyright Act, 17 U.S.C. § 504(c), permitting an award of statutory damages for willful copyright infringement. *See, e.g.*, *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631 (2d Cir. 1998).

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

*Gabbanelli Ubaldo Di Elio Gabbanelli*, 575 F.3d 693, 698 (7th Cir. 2009). That's the error here.

Because there is a recognized constitutional right to jury trial on the question of statutory damages, *Feltner v. Columbia Pictures Tv*, 523 U.S. 340, 355 (1998),[3] where a defendant has requested a trial by jury, the plaintiff's last opportunity to elect statutory damages is when the case is submitted to the jury for deliberation. "[O]rdinarily, if an election to receive statutory damages is not made prior to final judgment, the election is waived." *Olem Shoe Corp. v. Wash. Shoe Corp.*, 591 F. App'x 873, 878 n.5 (11th Cir. 2015). Statutory damages are within the court's discretion to award as "shall find to be just." *Id.* Accordingly, a plaintiff who does not affirmatively elect before final judgment will be limited to monetary recovery of *actual damages proven and defendant's profits*. *See, e.g.*, *Olem Shoe Corp.*, 591 F. App'x at 878 n.5; *Alexander v. Chesapeake, Potomac & Tidewater Books, Inc.*, 60 F. Supp. 2d 544, 546 (E.D. Va. 1999).

The Eleventh Circuit Court of Appeals has also explained that an election of remedies is irrevocable on appeal where the attempt to revisit a prior election took place after final judgment, precisely because the Lanham Act's plain language requires an

---

[3] The Eleventh Circuit has applied *Feltner* to civil actions for statutory damages under the Lanham Act. *See* Eleventh Circuit Civil Pattern Jury Instructions, § 10.6 (2013), and Annotations and Comments.

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

election for statutory damages before final judgment. *Jordan v. Time, Inc.*, 111 F.3d 102, 104 (11th Cir. 1997) ("A plaintiff is precluded from electing statutory damages and then appealing the award of actual damages; plaintiff does not get two bites of the apple."); *see also Twin Peaks Prods. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1380 (2d Cir. 1993).

Even in *Oboler v. Goldin*, 714 F.2d 211 (2d Cir. 1983), where the Second Circuit Court of Appeals allowed a plaintiff who failed to timely elect statutory damages to elect them on remand, it still didn't allow the plaintiff to pursue both remedies to a conclusion and then pick among the damages most favorable.

The requirements of due process are at play. There must be notice and a meaningful opportunity to be heard. *See, e.g., Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950); *Jolibois v. FIU Bd. of Trs.*, 654 F. App'x 461, 465 (11th Cir. 2016). A post-judgment award of statutory damages to Sprint even though Sprint failed to elect pre-judgment those damages deprives Appellants of their right to due process. Because Sprint failed to elect to recover statutory damages over actual damages before final judgment, as it was obligated to do by the statute's plain language, Sprint should have been restricted to the actual damages founded on the evidence. Instead, Sprint, seeing that the $5.2 million dollar award of *actual damages* was indefensible, as Defendants' Motion JNOV explained, took a second bite at the statutory damages apple to secure an award more than *139 times greater* than what the

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131   305-444-1599   800-216-6185
www.easleyappellate.com

*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

evidence showed.

## B.   AT BEST, SPRINT WAS ENTITLED TO $38,758.75 ACTUAL DAMAGES PROOF.

Actual damages in a trademark infringement action are designed to compensate a plaintiff for injuries actually, proximately caused by a defendant's infringing acts. 15 U.S.C. § 1117(a); *Caesars World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 274 (3d Cir. 1975); *St. Charles Mfg. Co. v. Mercer*, 737 F.2d 891, 893 (11th Cir. 1983). Compensatory awards may not be based on Sprint's speculation or conjecture. *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1122 (8th Cir. 1999).

In closing arguments, however, Sprint speculatively asked the jury to reward it with damages in the amount of $400,000 for trademark infringement, $400,000 for unfair competition, $400,000 for trademark dilution, $400,000 for infringement of the sound mark, and $400,000 for unfair competition. DE326 at 24–26. The only source for such a request was the testimony of Mr. Kaplan regarding the calculation of royalty fees at 10% of net revenue and his statement that Retrobrands had been paid "approximately 40 to 50,000" in royalty fees from Nextel, Inc.

Sprint's problem is that damages aren't awarded based on *revenue*—they are based on *profits*. DE323 at 108; DE326 at 24–26; *see* law discussed *infra*. The only possible evidence of *profits* came from the Defendants in the amount of $38,758.75. That $38,758.75 was submitted by Sprint's own Trial Exhibit 62 of Nextel, Inc.'s net income for 2016 through 2018. DE314-16 at 7. Sprint's ultimate award was **more than**

40

**139 times the evidence** of profits and flatly contrary to the great weight of the evidence.

Second problem: The Lanham Act forbids a district court from allowing recoveries so excessive that they amount to a penalty. *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 744 (7th Cir. 1985). It is not credibly debatable that an award of more than 139 times the actual damages evidence is an excessive penalty.

Third, Sprint didn't carry its burden to prove (a) its actual damages and (b) a causal connection between its actual damages and the Lanham Act violation. *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1564 (11th Cir. 1986); *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 286 (4th Cir. 2003), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). Sprint had to prove not just the financial cost of its injury, but also any lost profits it might have earned "but for" the infringement using a reasonable basis for such computation. *See Caesars World*, 520 F.2d at 274; *Mercer*, 737 F.2d at 893.

Sprint presented no evidence of any profits it lost "but for" infringement. No evidence that it sold a single phone bearing the NEXTEL mark. No invoice. No receipt. No customer order.

Sprint presented no legally competent evidence of any damage to its reputation either. *St. Charles Mfg. Co. v. Mercer*, 737 F.2d 891, 893 (11th Cir. 1983) (affirming denial of actual damages where no evidence showing damage to reputations).

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

Sprint's evidence showed the opposite. The manifest weight of the evidence is Sprint discontinued Nextel because it had already lost its subscribers and value as the technology became obsolete. DE83 at 20–21; DE84 at 3; DE298 at 85; DE318-10 at 99–100; DE318-11 at 1–2; DE322 at 93; DE323 at 84–85. Sprint even wrote off the Nextel goodwill years earlier and couldn't possibly suffer damage to the discarded goodwill and lost reputation. DE318-10 at 99–100; DE322 at 93; DE323 at 84–85.

In *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582 (5th Cir. 1980), the Fifth Circuit Court of Appeals overturned an award of actual damages because that plaintiff, lacking sufficient resources, had been unable to produce more than a small quantity of its goods in the United States. It was unlikely the defendant's infringement caused actual damage to the plaintiff. *Id.   Maltina* compels the same conclusion here. It is widely recognized that Sprint is a defunct company, with a defunct product, with obsolete technology. There's no longer even an iDEN network on which a push-to-talk Nextel device would work. Sprint showed no evidence of sales. No lost profits.

As an alternative to lost profits, a prevailing plaintiff may recover the defendant's *profits*. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1227-28 (10th Cir. 2000). But for "profits, the court is constrained to award the amount proved, subject only to an adjustment, up or down, where the recovery would be otherwise unjust." *Thompson v. Haynes*, 305 F.3d 1369, 1380 (Fed. Cir. 2002). Sprint's only lost profits evidence was $38,758.75, in Sprint's own Trial Exhibit 62 showing

Nextel, Inc.'s net income for 2016-2018 was $38,758.75. DE314-16 at 7. The award of more than 139 times the only evidence was contrary to the great weight of the evidence.

## C.    EVEN IF SPRINT IS ENTITLED TO STATUTORY DAMAGES, A $4.5 MILLION STATUTORY DAMAGES AWARD VIOLATES APPELLANTS' RIGHT TO DUE PROCESS.

The Due Process Clause limits statutory damages awards "where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919).

Courts determining damages under § 1117(c)(2) have considered the following seven factors:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*See Bryant v. Media Right Prods.*, 603 F.3d 135, 143 (2d Cir. 2010). The amount of statutory damages that can be awarded in the case of a counterfeit trademark is "per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c). Not per individual item bearing the counterfeit mark. *Gabbanelli Accordions*, 575 F.3d at 698.

Generally, "judges have issued awards far below the statutory maximum. .

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

.where the defendant willfully infringes on the plaintiff's mark. . .but where there is no concrete information about the defendant's actual sales figures and profits and the estimate of plaintiff's lost revenue." *Allstar Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 624 (S.D.N.Y. 2010) (collecting cases); *Rolex Watch U.S.A., Inc. v. Hernandez*, No. 13-20643-CIV-GRAHAM/GOODMAN, 2013 U.S. Dist. LEXIS 197201, at *8 (S.D. Fla. Aug. 12, 2013) (collecting cases).

This statutory damages award of $4.5 million included the *maximum* allowable under the Lanham Act for trademark infringement. Yet, the key factors weighed heavily *against the statutory maximum* award.

First, the jury found only two trademarks were infringed. DE309 at 1–8. Second, the manifest weight of the evidence shows Sprint discontinued Nextel years earlier because it was losing too much money and the technology was outdated. DE83 at 20–21; DE84 at 3; DE298 at 85; DE318-10 at 99–100; DE318-11 at 1–2; DE322 at 93; DE323 at 84–85. Third, Sprint now refers to Nextel, at most, to describe its history to a niche set of customers. DE298 at 110–11, 119, 135, 191–92; DE322 at 93; DE323 at 63.

Finally, Sprint produced no evidence about any lost revenues or the monetary value of Nextel. The only possible competent evidence of profits by Appellants was a mere $38,758.75. DE314-16 at 7. Thus, an award of this magnitude was "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable."

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES
*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

*Williams*, 251 U.S. at 66–67.

**ISSUE V: THE PERMANENT INJUNCTION ORDER SHOULD HAVE BEEN VACATED BECAUSE THE DISTRICT COURT LACKED JURISDICTION TO ENTER IT. FURTHER, THE GREAT WEIGHT OF THE EVIDENCE IS THAT SPRINT IS NOT LIKELY TO SUFFER AN IRREPARABLE INJURY AND THERE IS NO RISK OF CONFUSION.**

**A.    ONCE THE DISTRICT COURT ENTERED THE AMENDED FINAL JUDGMENT AND APPELLANTS TIMELY FILED THEIR AMENDED NOTICE OF APPEAL, JURISDICTION TRANSFERRED TO THE APPELLATE COURT. THUS, THE DISTRICT COURT WAS WITHOUT JURISDICTION TO ENTER THE PERMANENT INJUNCTION ORDER.**

The District Court entered the Final Judgment on April 22, 2022, without granting a permanent injunction or reserving jurisdiction and expressly denying all **pending** motions as moot. DE310. Thus, as a matter of law Sprint's pending ore tenus motion was denied at that time. *Id.* It entered the Amended Final Judgment on July 20, 2022, again without granting a permanent injunction or reserving jurisdiction to adjudicate it. "[T]he entry of a final judgment implicitly denies any pending motions." *Goodman v. New Horizons Cmty. Serv. Bd.*, No. 05-14717, 2006 U.S. App. LEXIS 9040, at *8 (11th Cir. Apr. 12, 2006). As the court had entered a final, immediately appealable order, expressly denying all motions as moot and implicitly denying any permanent injunction, Appellants rightly filed their Notices of Appeal. DE354; DE367; DE368.

The district court misapprehended it had the authority to close the case and still consider the permanent injunction under its "inherent authority to manage its own

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

docket." DE385 at 14. But "an effective notice of appeal divests the district court of jurisdiction over the matter forming the basis for the appeal", with few exceptions. *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987) (listing cases). With respect, neither case the district court cited allows a court to enter an order after a case is closed during pending appellate jurisdiction. *Wilson v. Farley*, 203 F. App'x 239, 250 (11th Cir. 2006) (district court order that parties wait until expiration of discovery proper exercise of court's authority to manage docket); *Fla. Ass'n for Retarded Citizens v. Bush*, 246 F.3d 1296, 1298 (11th Cir. 2001) (district court could reactivate case to enforce consent decree).

It is axiomatic that a lower court retains jurisdiction to *manage* its docket and *enforce* a judgment, but it may not alter or enlarge the scope of its judgment pending appeal. *Cincinnat Bronze*, 829 F.2d at 588; *Bush*, 246 F.3d at 1298.; *see also Ced's, Inc. v. United States Envtl. Prot. Ag.*, 745 F.2d 1092, 1095–96 (7th Cir. 1984) (new judgment with new conclusions of law supporting earlier order void because district court was without jurisdiction to amend original order); *McClatchy Newspapers v. Cent. Valley Typographical Union, No. 46*, 686 F.2d 731, 734–35 (9th Cir. 1982) (voiding amended order issued after filing notice of appeal), *cert. denied*, 459 U.S. 1071 (1982). It lacked any authority to exercise injunctive power that would "alter the status of the case as it rests before the court of appeals." *Coastal Corp. v. Tex. E. Corp.*, 869 F.2d 817, 819–20 (5th Cir. 1989); *see also Int'l Asso. of Machinists & Aerospace*

*Workers v. E. Air Lines, Inc.*, 847 F.2d 1014, 1018 (2d Cir. 1988) (district court without jurisdiction to enter injunction after dismissing plaintiff's complaint and filing of notice of appeal). Because the district court plainly lost jurisdiction to issue the Permanent Injunction altering/enlarging the scope of its judgment after jurisdiction transferred to this Court, it should be vacated.

**B.     SPRINT IS NOT ENTITLED TO A PERMANENT INJUNCTION BECAUSE THE GREAT WEIGHT OF THE EVIDENCE IS THAT SPRINT IS UNLIKELY TO SUFFER AN IRREPARABLE INJURY AND THERE IS NO RISK OF CONFUSION.**

In deciding whether to grant a permanent injunction, the court considers whether: (1) the plaintiff suffered irreparable injury; (2) the remedies available at law are inadequate to compensate; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008).

Sprint must show irreparable injury based on the facts of this case. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Irreparable injury is not necessarily presumed following a showing of copyright infringement, for example, and monetary harm from the infringement is not considered "irreparable." *SunTrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1276 (11th Cir. 2001); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006).

Sprint produced no evidence it suffered any harm by Appellants' use of the

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131   305-444-1599   800-216-6185
www.easleyappellate.com

Nextel Mark. The Eleventh Circuit emphasizes "the asserted irreparable injury must be neither remote nor speculative, but actual and imminent.'" *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal quotation omitted). Sprint offered no evidence of a single lost sale or a single lost customer—even then, past harm is not a basis for injunctive relief. *See Hoop Culture, Inc. v. Gap Inc.*, 648 F. App'x 981, 986 (11th Cir. 2016) (citing *Siegel*, 234 F.3d at 1176).

Sprint does not sell Nextel phones or offer a push-to-talk service and did not offer any competent, objective evidence that it intends to do so. *See* DE83 at 20–21; DE84 at 3; DE298 at 85; DE318-10 at 99–100; DE318-11 at 1–2; DE322 at 93; DE323 at 84–85.

Sprint wrote off the goodwill of Nextel years ago and thus can't suffer damage to its goodwill or reputation. DE318-10 at 99–100; DE322 at 93; DE323 at 84–85. There was no competent, objective evidence that Sprint uses or intends to use the Mark in commerce. Thus, there could be no irreparable injury. *See Hoop Culture*, 648 F. App'x at 986 ("an injunction barring Gap from selling shirts it does not have and has no plans to sell in the future would be unnecessary, at best, and would do nothing to prevent further harm to Hoop Culture"; denial of injunction affirmed).

Further, Sprint presented no competent evidence of an actual likelihood confusion—neither between the discontinued devices and shut-down network nor the CAT devices Sprint is now selling and anything being sold by Appellants. *See Hoop*

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

*Culture*, 648 F. App'x at 984 (district court found no evidence of brand confusion where Gap would be selling out of shirts and would not be reordering); *Hamilton Int'l Ltd. v. Vortic LLC*, 13 F.4th 264, 278 (2d Cir. 2021) (no likelihood of confusion where plaintiff, watch maker, did not produce evidence it intended to enter defendant's market by manufacturing and distributing restored watches with antique parts). Even Sprint's intrinsically safe devices are not sold to the general public. DE298 at 110–11, 119, 135, 191–92; DE322 at 93; DE323 at 63. *See W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 574 (2d Cir. 1993) (no likelihood of confusion where personal care were not displayed in the same areas of food or drug stores); *Checkpoint Sys. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 282 (3d Cir. 2001) (when products do not directly compete, mark similarity is not determinative of confusion).

Next, there was no competent evidentiary basis for the unlimited scope of the Permanent Injunction. The proper geographic scope is determined by "examining the market penetration of the mark." *Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc.*, 921 F.2d 467, 472 (3d Cir. 1990). "An injunction is appropriate only if the market penetration is significant enough to pose the real likelihood of confusion among the consumers in that area." *Id*. Sprint, however, not only failed to submit any competent evidence of market penetration, but the manifest weight of the evidence is that it discontinued selling Nextel devices and shutdown the network, as it announced to the public. DE318-10 at 99–100; DE318-11 at 1–2; DE322 at 93; DE323 at 84–85. Any

references to Nextel were merely historical references directed to a niche market.

Moreover, vacating the injunction will not harm Sprint or serve the public because Sprint doesn't use the Nextel Mark in commerce and Sprint made it publicly clear that it was discontinuing Nextel devices and long ago shut down the network. DE318-10 at 99–100; DE318-11 at 1–2; DE322 at 93; DE323 at 84–85.

As Sprint does not use the Nextel Marks in commerce, the award of money damages is a fully adequate remedy at law. *See Hoop Culture*, 648 F. App'x at 986. The Permanent Injunction Order should be vacated.

## CONCLUSION

**FOR THE REASONS AND LEGAL AUTHORITIES SET FORTH HEREIN**, Appellants respectfully submit that Sprint lacks standing, as does T-Mobile, and the district court lacked jurisdiction. Dismissal is warranted. In the alternative, Appellants requests reversal of the Amended Final Judgment, Denial of the Omnibus Motion JNOV; Motion to Alter or Amend the Judgment; and Alternatively, Motion for a New Trial, Permanent Injunction Order, and remand for entry of judgment in favor of Appellants or, alternatively, for new trial on damages. At the least, Appellants request remand with instructions that damages be reduced to $38,758.75. Further, the district court lacked jurisdiction over the permanent injunction and it should be vacated.

Respectfully submitted,

ALEX BROWN, ESQ.                    BY:    /s/ Dorothy F. Easley
                                                                          
EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com

THE CONCEPT LAW GROUP PA
6400 North Andrews Avenue, Suite 500
Fort Lauderdale, Florida 33309
*Local Trial Counsel for Appellants*

JAMES J. KERNELL, ESQ. (*pro hac vice*)
KYLE D. DONNELLY, ESQ. (*pro hac vice*)
AVEK IP LLC
8900 State Line Road, Suite 500
Leawood, Kansas 66206
*Trial Counsel for Appellants*

DOROTHY F. EASLEY, MS, JD, BCS APPEALS
FLA. BAR NO. 0015891
**EASLEY APPELLATE PRACTICE, PLLC**
1200 Brickell Ave., Suite 1950
Miami, Florida 33131
T: 305-444-1599; 800-216-6185
E: administration@easleyappellate.com
admin2@easleyappellate.com
*Appellate Attorneys for Appellants*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains fewer than 13,000 words, specifically  12,619 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).  It has been prepared in Word 2010/2020 using a proportionally spaced Times Roman 14 point font.

BY:     /s/ Dorothy F. Easley
DOROTHY F. EASLEY, MS, JD, BCS APPEALS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Opening Initial Brief **and Appendix Record Excerpts Volumes I through VII** were filed using the CM/ECF system and the Appellants JEFFREY KAPLAN, RETROBRANDS USA LLC, AND NEXTEL MOBILE WORLDWIDE, INC., Opening-Initial Brief **and Supplemental Appendix Record Excerpts Volume VIII** were sent to the Eleventh Circuit Court of Appeals via

51

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131   305-444-1599   800-216-6185
www.easleyappellate.com

RETURN TO TABLE OF CONTENTS
RETURN TO TABLE OF AUTHORITIES

USPS Priority Mail Delivery Tracking and also served in accordance with Rule 2.516,

Fla. R. Jdcl. Admin., governing Florida Attorneys via **eMail *or* this firm's secure**

**upload URL** this __14th__    __day of February, 2023__, along with original **Appendix**

**Record Excerpts Volumes previously filed and served** via **eMail *or* this firm's**

**secure upload URL on the** __28th__ day of __November__, 2022 to the following attorneys

on the attached Service List:

BY: __/s/ Dorothy F. Easley__

DOROTHY F. EASLEY, MS, JD, BCS APPEALS

### SERVICE LIST
*SPRINT COMMUNICATIONS LLC, PLAINTIFF/APPELLEE, v. JEFFREY KAPLAN, ET AL.,*
*DEFENDANTS/APPELLANTS*
APPEAL CASE NO. 22-11717-JJ

DANIEL B. ROGERS, ESQ.
SHOOK, HARDY & BACON LLP
*Counsel for Plaintiff Sprint*
Citigroup Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
T: 305-358-5171
E: drogers@shb.com

SARA F. HOLLADAY-TOBIAS, ESQ.
EMILY YANDLE ROTTMANN, ESQ.
MCGUIRE WOODS LLP
*Counsel for Plaintiff Sprint*
*Communications LLC*
50 North Laura Street, Suite 3300
Jacksonville, Florida 32202
T: 904-798-3200
E: stobias@mcguirewoods.com
flservice@mcguirewoods.com

JONATHAN Y. ELLIS, ESQ.
MCGUIRE WOODS LLP
*Lead Appellate Counsel for Appellee*
*Sprint Communications LLC*
501 Fayetteville Street, Suite 500
Raleigh, North Carolina, 27601
T: 919-755-6588
E: jellis@mcguirewoods.com

ALEX BROWN, ESQ.
DARREN SPIELMAN, ESQ.
THE CONCEPT LAW GROUP PA
*Local Trial Counsel for Appellants*
6400 North Andrews Avenue, Suite 500
Fort Lauderdale, Florida 33309
T: 754-300-1325
E: abrown@conceptlaw.com
dspielman@conceptlaw.com

JAMES J. KERNELL, ESQ. (*pro hac vice*)

52

*Sprint v. Retrobrands, etc.,* 11th Cir. Case No. 22-11717

erottmann@mcguirewoods.com

AMANDA L. DEFORD, ESQ.
LUCY J. WHEATLEY, ESQ.
BRIAN RIOPELLE, ESQ.
MCGUIRE WOODS LLP
*Counsel for Plaintiff/Appellee Sprint
Communications LLC*
800 East Canal Street
Richmond, Virginia 23219
T: 804-775-1000
E: adeford@mcguirewoods.com
lwheatley@mcguirewoods.com
briopelle@mcguirewoods.com

KYLE D. DONNELLY, ESQ. (*pro hac vice*)
AVEK IP LLC
*Trial Counsel for Appellants*
8900 State Line Road, Suite 500
Leawood, Kansas 66206
T: 913-549-4700
E: jjk@kcpatentlaw.com
kdd@kcpatentlaw.com

DOROTHY F. EASLEY, MS JD BCS APPEALS
EASLEY APPELLATE PRACTICE PLLC
*Lead Appellate Counsel for Appellants*
1200 Brickell Avenue, Suite 1950
Miami, Florida 33131
T: 305-444-1599; 800-216-6185
E: administration@easleyappellate.com
admin2@easleyappellate.com
Upload URL for secure e-service:
https://www.hightail.com/u/easley-appellate-practice-pllc
www.easleyappellate.com

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185
www.easleyappellate.com