# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

SPRINT COMMUNICATIONS LLC,    )
    )
    *Plaintiff-Appellee,*    )
    )
    v.    )    Case No.: 22-11717
    )
RETROBRANDS USA, LLC,    )
JEFFREY KAPLAN,    )
NEXTEL MOBILE WORLDWIDE INC.,    )
    )
    *Defendants-Appellants.*    )

## PLAINTIFF-APPELLEE'S RESPONSE IN OPPOSITION TO APPELLANTS' MOTION TO TAKE JUDICIAL NOTICE OF <u>RELATED USPTO NEXTEL RECORDS</u>

*Sprint Communications LLC v. Retrobrands USA, LLC, et al.*
Case No. 22-11717

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellee Sprint Communications LLC ("Sprint"), pursuant to 11th Cir. R. 26.1-1 through 26.1-3 and Fed. R. App. P. 26.1, hereby certifies that in addition to the persons and entities listed in Appellants' CIP and Corporate Disclosure Statement included in their February 14, 2023 Amended Opening Brief and Appellants' CIP and Corporate Disclosure Statement included in their May 10, 2023 motion, the following persons and entities also have an interest in the outcome of this case:

1.    Eller, Claire H. (Counsel for Plaintiff-Appellee)

2.    McLean, Majorie G. (Counsel for Plaintiff-Appellee)

Sprint Communications LLC is an indirect wholly-owned subsidiary of Sprint LLC.

On December 31, 2021, Sprint Corporation converted to a limited liability company and is now Sprint LLC, which is a direct wholly-owned subsidiary of T-Mobile USA, Inc.

T-Mobile USA, Inc., a Delaware corporation, is a direct wholly-owned subsidiary of T-Mobile US, Inc., a Delaware corporation.

*Sprint Communications LLC v. Retrobrands USA, LLC, et al.*
Case No. 22-11717

T-Mobile US, Inc. (NASDAQ: "TMUS") is a publicly-traded company listed on the NASDAQ Global Select Market of NASDAQ Stock Market LLC ("NASDAQ").

Deutsche Telekom Holding B.V., a limited liability company (besloten vennootschap met beperkte aansprakelijkheidraies) organized and existing under the laws of the Netherlands ("DT B.V."), owns more than 10% of the shares of T-Mobile US, Inc.

DT B.V. is a direct, wholly-owned subsidiary of T-Mobile Global Holding GmbH, a Gesellschaft mit beschränkter Haftung organized and existing under the laws of the Federal Republic of Germany ("Holding").

Holding, is in turn a direct, wholly-owned subsidiary of T-Mobile Global Zwischenholding GmbH, a Gesellschaft mit beschränkter Haftung organized and existing under the laws of the Federal Republic of Germany ("Global").

Global is a direct, wholly-owned subsidiary of Deutsche Telekom AG (OTCQX: "DTEGY"), an Aktiengesellschaft organized and existing under the laws of the Federal Republic of Germany ("Deutsche Telekom").

*Sprint Communications LLC v. Retrobrands USA, LLC, et al.*
Case No. 22-11717

The principal trading market for Deutsche Telekom's ordinary shares is the trading platform "Xetra" of Deutsche Börse AG. Deutsche Telekom's ordinary shares also trade on the Frankfurt, Berlin, Düsseldorf, Hamburg, Hannover, München and Stuttgart stock exchanges in Germany. Deutsche Telekom's American Depositary Shares ("ADSs"), each representing one ordinary share, trade on the OTC market's highest tier, OTCQX International Premier (ticker symbol: "DTEGY").

Additionally, Softbank Group Corp., through its wholly-owned subsidiary, Delaware Project 6 L.L.C., beneficially owns approximately 3.2% of shares of T-Mobile US, Inc. common stock outstanding.

Masayoshi Son owns more than 10% of SoftBank Group Corp.

Dated: May 22, 2023

*/s/ Jonathan Y. Ellis*
Jonathan Y. Ellis

*Counsel for Plaintiff-Appellee*
*Sprint Communications LLC*

## BACKGROUND

This appeal concerns Appellee Sprint's efforts to enforce its trademark rights in the Nextel brand, to seek compensation for Appellants' unlawful attempt to capitalize on Sprint's goodwill in that brand, and to stop their ongoing infringement. As explained in Sprint's merits brief, Appellants have offered no reason to question the jury's well-supported findings of infringement and no grounds to alter either the damages award or the permanent injunction issued by the district court. Appellants' last-minute motion for judicial notice—filed nearly a week after briefing on the appeal was completed—provides no further argument or information relevant to this appeal nor any sound basis to disturb the district court's judgment. The motion should be denied.

1. Appellant Jeffrey Kaplan's company, Retrobrands USA LLC, is in the business of reviving famous, but abandoned brands. *See* Answering Br. 16. Together with co-defendant Stephen Calabrese,[1] Kaplan targeted Sprint's "famous and iconic trademark NEXTEL" as one

---

[1] Although Calabrese and his company are jointly and severally liable with Appellants, they are not parties to this appeal. *See* Answering Br. 12 n.2.

such brand. *See id.* at 17 (quoting Dkt.314-39 at 17).[2] The defendants sought to "revive" the Nextel brand despite Sprint's continuing use of the brand and the defendants' knowledge that Sprint had recently renewed its federal registrations in the two NEXTEL trademarks at issue: the word mark NEXTEL ("the NEXTEL Mark") (Reg. No. 1,884,244) and a sound mark of a distinctive "chirp" tone ("the Chirp Mark") (Reg. No. 5,047,282). *See id.* at 16-17; Dkt.314-47 (NEXTEL Mark registration); Dkt.314-48 (Chirp Mark registration).

When Sprint first discovered the unlawful scheme, it sent two cease-and-desist letters to Calabrese, who falsely told Sprint he had stopped using the marks. *See* Answering Br. 15-16. When Sprint later discovered that, contrary to Calabrese's assurances, Appellants continued to market competing mobile devices and services under the Nextel brand and a series of NEXTEL-formative Internet domains, it initiated this action, asserting claims of trademark infringement,

---

[2] "Dkt.__" citations are to the district court docket. Citations to record pages are to the page numbers that appear in the header generated by the court's ECF system. Citations to transcripts use the page and line numbers assigned by the court reporter.

counterfeiting, unfair competition, cybersquatting, and trademark dilution. *See id.* at 18-22.

2.    Appellants' primary defense during the week-long trial was that Sprint had abandoned the relevant trademarks. In support of that defense, Appellants attempted to introduce into evidence several USPTO Trademark Electronic Search System ("TESS") results showing Sprint's cancellation or abandonment of various trademark registrations related to the Nextel brand. Dkt.323 at 9:3-10; Dkt.318-6 at 1-4 (attached as Exhibit 1). Sprint objected to their introduction, arguing that the records were irrelevant to Sprint's purported abandonment of the marks at issue and would mislead the jury. Dkt.323 at 9:4-10. Sprint explained that the TESS records all concerned the registrations of marks *other than* the NEXTEL and Chirp Marks that Sprint asserted in this case. *Id.* And it further explained that the registrations for the asserted NEXTEL and Chirp Marks each remained live. *Id.* The district court sustained the objection, excluding all TESS records except those concerning the live registrations in the NEXTEL and Chirp Marks. Dkt.323 at 9:19-21.

Appellants later attempted to introduce another TESS record, this one concerning the NEXTEL black and yellow design mark. Dkt.323 at

3

10:12-22; Dkt.318-19 (attached as Exhibit 2). Sprint again objected, explaining that the record was irrelevant and misleading because the design mark was also not being asserted in the case. Dkt.323 at 10:12-24. The district court again agreed, excluding the exhibit: "If it's not the marks that we're talking about, I'll sustain the objection." Dkt.323 at 10:15-16. When Appellants urged the court to reconsider, the court asked Appellants to explain "how . . . this move[s] the ball in our case." Dkt.323 at 10:17-24. Appellants responded that although the registration in the black-and-yellow logo was "dead," Sprint was "still using it." Dkt.323 at 11:14-19. Unpersuaded, the court declined to reconsider its ruling. Dkt.323 at 12:2.

At the close of the defendants' case, the district court granted judgment as a matter of law to Sprint on the defendants' abandonment defense with regard to the Chirp Mark, while reserving ruling on the NEXTEL Mark. Dkt.324 at 22:8-29:14. After trial, the jury rejected the defendants' abandonment defense with regard to the NEXTEL Mark and entered a verdict for Sprint on every count. Dkt.309. Based on the jury's verdict, the court entered an award of $4.5 million in statutory damages

and subsequently issued a permanent injunction enjoining Appellants'
continuing infringement of Sprint's marks.  Dkt.352; Dkt.356.

3.    Appellants appealed, challenging the damages award and
injunction and renewing their abandonment defense.  Appellants have
not appealed the district court's evidentiary rulings on the TESS records
offered at trial.  The parties have fully briefed the issues on appeal.  Five
days after Appellants filed their reply brief, they filed the current motion
asking this Court to take judicial notice of several printouts of USPTO
TESS records—some of which were offered and rejected below; the rest
of which are strikingly similar to those offered and rejected below.
*Compare* Dkt.318-6 at 1-4 and Dkt.318-19, *with* Mot., Ex. A and Ex. B.
Nowhere in their motion do Appellants acknowledge that the district
court excluded these exact or similar records at trial.

## ARGUMENT

Appellants' motion for judicial notice should be denied.  Sprint
presented overwhelming evidence to the jury that Appellants infringed
upon and counterfeited the NEXTEL and Chirp Marks, in which Sprint
owns valid, live, and incontestable registrations, as well as common law
rights.  *See* Answering Br. 5-22.  The jury correctly found that Sprint had

not abandoned its rights to the NEXTEL Mark, and the district court properly enjoined Appellants from continuing their unlawful scheme. *See id.* at 35-47, 61-67. Appellants' proffered TESS records are irrelevant to this Court's review of the district court's judgment, and therefore not appropriate for judicial notice for the first time in this Court.

On appeal, the question is not whether, as a matter of fact, Sprint abandoned its NEXTEL Mark but only whether sufficient evidence supports the jury's finding of Sprint's non-abandonment of the NEXTEL Mark. Evidence that was not presented to the jury—and in some instances specifically excluded by the district court—has no bearing on that question. Moreover, as the district court concluded, the proffered TESS records are also irrelevant to the factual question of whether Sprint abandoned the NEXTEL Mark. Those records do not evidence Sprint's abandonment of the NEXTEL Mark registration. Instead, those records relate to certain registrations not asserted at trial that neither the jury's verdict nor the permanent injunction rests on. Thus, the district court properly excluded evidence concerning the status of these extraneous registrations at trial. This Court can and should properly disregard Appellants' attempt to re-introduce that evidence here.

6

## A.    Legal Standard

"Judicial notice is a means by which adjudicative facts not seriously open to dispute are established as true without the normal requirement of proof by evidence." *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1204 (11th Cir. 2004).  Under Federal Rule of Evidence 201, a court may take notice of an "adjudicative fact" that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(a)-(b).  "Adjudicative facts," this Court has explained, "are facts that are relevant to a determination of the claims presented in a case."  *Dippin' Dots*, 369 F.3d at 1204; *see Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997) (en banc) (declining to take judicial notice of evidence where the court could not "readily say that the result of the case probably would be different").  A court may take judicial notice of such facts "at any stage of the proceeding," either on its own or by "a party['s] request."  Fed. R. Evid. 201(c)-(d).

"[T]he taking of judicial notice of facts is, as a matter of evidence law, a highly limited process."  *Shahar*, 120 F.3d at 214.  It is particularly

disfavored on appeal. Doing so "bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in [the] district court." *Id.* It also risks "inappropriately impos[ing] *de novo* review on appeal" to fact-intensive questions that are appropriately reviewed under a deferential standard. *United States v. Barton*, 909 F.3d 1323, 1335 (11th Cir. 2018) (citations omitted). That would "utterly undermine the deference [the appellate court] owe[s] to the district court and profoundly alter the role of an appellate court." *Id.*

Finally, even where a court may take judicial notice of certain facts contained in public sources, it may not take judicial notice of the moving party's inferences or conclusions drawn from those facts where the inferences and conclusions are not themselves "accurately and readily determined" from those public sources. Fed. R. Evid. 201(b). For example, the Southern District of Florida has declined to take judicial notice of "facts" that a party had inferred from a publication of the U.S. Department of Education, where the "'facts' . . . drawn from" the publication did not qualify as "facts not seriously open to dispute." *Awodiya v. Ross Univ. School of Med.*, 2018 WL 11472292, at *1 (S.D. Fla. June 22, 2018).

**B.    The Proffered TESS Records Are Not Appropriate For Judicial Notice on Appeal**

Appellants ask the Court to take judicial notice of three TESS records that they contend "show how Nextel has been abandoned with no intent to resume use." Mot. 3. The records show no such thing. They are entirely irrelevant to the issues on appeal and thus inappropriate for judicial notice by this Court.

1.    Most fundamentally, the TESS records are irrelevant because, by definition, they do not bear on whether sufficient evidence offered at trial supports the jury's finding that Sprint did not abandon the NEXTEL Mark.

Judgment as a matter of law, despite a jury's finding to the contrary, is appropriate only where, after "view[ing] the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party," the court finds "no legally sufficient evidentiary basis for a reasonable jury" to reach a verdict for the nonmoving party. *Williams v. First Advantage LNS Screening Solutions, Inc.*, 947 F.3d 735, 744 (11th Cir. 2020). By definition, that review must be focused on the "evidence" presented at trial, not "facts" introduced for the first time on appeal. And that is particularly so here, given that it was Appellants'

burden to prove to the jury its affirmative defense of abandonment.  *See*

*Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167,

1174 (11th Cir. 2002).

The TESS records Appellants proffer here were not admitted as

evidence at trial.  In fact, Appellants unsuccessfully moved to introduce

some of these same records at trial.  *See* pp. 3-4, *supra*.  And Appellants

have failed to challenge—or even acknowledge—those evidentiary

rulings on appeal, much less provide a persuasive reason to conclude that

the court abused its discretion in excluding those records.  *See* pp. 12-15,

*infra*.  It is too late to do so now.  *See United States v. Ford*, 270 F.3d

1346, 1347 (11th Cir. 2001) ("[O]ur well-established rule is that issues

and contentions not timely raised in the briefs are deemed abandoned.").

Because these records were not presented to the jury, they are

irrelevant to whether a reasonable jury could find, based on the evidence

that was before them, that Sprint did not abandon the NEXTEL Mark.

Taking judicial notice of this evidence for the first time on appeal would

not only permit an end run around Appellants' forfeiture, but would

invite the Court to "bypass[] the safeguards" built in to "the usual process

of proving facts by competent evidence in [the] district court." *Shahar*, 120 F.3d at 214. The Court should reject that invitation.

None of Appellants' cited cases is to the contrary. Not a single decision that Appellants cite takes judicial notice of an agency record for the purpose of overturning a jury finding or questioning the sufficiency of evidence underlying a jury verdict. The vast majority of Appellants' citations do not involve review of jury verdicts at all. And the few that do are readily distinguishable. *See Massachusetts v. Westcott*, 431 U.S. 322, 322-23 (1977) (taking judicial notice of the fact that criminal defendant held a federal fishing license in considering whether the state-law complaint should have been dismissed on preemption grounds); *United States v. Howard*, 28 F.4th 180, 210 (11th Cir. 2022) (taking judicial notice of the fact that a criminal defendant lost her medical license as a result of the conviction when reviewing the district court's consideration of that expected outcome during sentencing); *United States v. Garcia*, 855 F.3d 615, 621-22 (4th Cir. 2017) (affirming a district court's decision to take judicial notice *and present to the jury* certain "*facts* contained on [the U.S. Citizenship and Immigration Services'] website").

For those reasons alone, Appellants' motion for judicial notice should be denied.

2.    Moreover, the Court should not take judicial notice of Appellants' proffered TESS records because they are wholly irrelevant to Appellants' abandonment defense.    To prove abandonment of the NEXTEL Mark, Appellants were required to prove that, before their infringing conduct, Sprint had "ceased using the mark in dispute"—*i.e.*, the NEXTEL Mark—and that it "ha[d] done so with an intent not to resume its use." *Cumulus Media*, 304 F.3d at 1174.  Sprint presented ample evidence to the jury of its continuous use of the NEXTEL Mark and its live, incontestable registration of that mark.  *See* Answering Br. 37-41; Dkt.314-47 (Reg. No. 1,884,244).  None of Appellants' proffered records refutes that evidence.

As an initial matter, trademark registration is different than trademark use.  Abandonment, and trademark rights in general, are based on a mark owner's use of a mark in commerce, not federal registration of the mark. *See Cumulus Media*, 304 F.3d at 1174; *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989).  Although the Lanham Act specifically provides that live registrations

provide affirmative evidence of ownership, *see* 15 U.S.C. § 1115, the Act has no provision affording any similar evidentiary value to the absence or cancellation of a live registration.  Rightly so, because trademark rights accrue through use of the mark in commerce with or without registration.  *See Tally-Ho*, 889 F.2d at 1022.

More importantly, the only registration records that Appellants offer here are for marks that Sprint did not assert at trial.  Critically, Appellants were found liable for infringing the live registration for Sprint's NEXTEL word mark (as well as Sprint's common law rights in NEXTEL and the Chirp Mark).  The live registration for the NEXTEL Mark is in a standard character format such that its scope broadly encompasses use of the word "Nextel" regardless of font, color, or stylization.  *See* Dkt.314-47; *see also In re Mighty Leaf Tea*, 601 F.3d 1342, 1348 (Fed. Cir. 2010) (affirming decision that trademark registration for words in standard character format applied to various renditions of that mark); 3 *McCarthy on Trademarks and Unfair Competition* § 19:58 (5th ed.) ("[A] registrant of a word in standard characters is entitled to protection 'in any font style, size, or color,

including a stylization that uses the font style' used by a junior user or subsequent applicant for registration.") (citation omitted).

By contrast, the TESS records attached to Appellants' motion concern registrations not of that standard character word mark (or the Chirp Mark), but of different stylized versions of the word "Nextel" or marks that include "Nextel" as part of longer word marks. *See* Mot., Exs. A-C. Sprint did not assert at trial that Appellants infringed those registrations. Because infringement of those other registrations was not at issue, and because the live registration of the standard character NEXTEL word mark encompasses infringing uses of NEXTEL in any font, the proffered records have no relevance to this case. As Appellants have acknowledged, "[t]he *name* Nextel is the trademark at issue here for equipment," a broader mark than a single logo or slogan. Dkt.323 at 11:9-10 (emphasis added). And as Sprint explained to the jury, "even if [it were] true" that Sprint abandoned certain stylized versions of the Nextel logo, "it just doesn't matter. All that matters is that they're using Nextel, and using Nextel to sell goods and services, because using the word is what infringes." Dkt.326 at 14:13-19.

Finally, Appellants err in contending that these records are subject to judicial notice because Sprint "relied heavily upon" the certain NEXTEL-related marks contained in those records. Mot. 2. Sprint's arguments on appeal rely exclusively on evidence that was presented to the jury of Sprint's use of the term "Nextel" in various forms. Sprint's live, incontestable registration for the NEXTEL Mark covers each of those uses, and each of those uses demonstrates Sprint's continuous use of the NEXTEL Mark. Whether Sprint currently owns individual registrations of certain stylized versions of the NEXTEL Mark or other marks that incorporate the NEXTEL Mark does not call into question that showing or Sprint's "cand[or] . . . with the Tribunal." Mot. 3. Rather, as the district court determined, TESS records purporting to show Sprint's cancellation or abandonment of such registrations are "irrelevant" and "misleading." Dkt.323 at 9:4-21 (excluding Dkt.318-6 at 1-4). Records of that sort were appropriately excluded below and are appropriately disregarded here.

## CONCLUSION

For the foregoing reasons, the Court should deny Appellants' motion to take judicial notice.


Dated: May 22, 2023                    Respectfully submitted,

                                       */s/ Jonathan Y. Ellis*

Lucy Jewett Wheatley                   Jonathan Y. Ellis
Virginia Bar No. 77459                 North Carolina Bar No. 41220
Amanda L. DeFord                       McGuireWoods LLP
Virginia Bar No. 85511                 501 Fayetteville Street
Claire Hagan Eller                     Suite 500
Virginia Bar No. 90077                 Raleigh, NC 27601
McGuireWoods LLP                       T: (919) 755-6688
Gateway Plaza                          F: (919) 755-6588
800 East Canal Street                  jellis@mcguirewoods.com
Richmond, VA 23219
T: (804) 775-4320                      Marjorie G. McLean
F: (804) 698-2017                      North Carolina Bar No. 59090
lwheatley@mcguirewoods.com             McGuireWoods LLP
adeford@mcguirewoods.com               201 North Tryon Street
celler@mcguirewoods.com                Suite 3000
                                       Charlotte, NC 28202
                                       T: (704) 373-8044
                                       F: (704) 805-5044
                                       mmclean@mcguirewoods.com

*Counsel for Plaintiff-Appellee Sprint Communications LLC*

16

# CERTIFICATE OF COMPLIANCE

1.    This response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 2,913 words, excluding the parts of the response exempted by Fed. R. App. P. 32(f).

2.    This response complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Century Schoolbook style.

Dated: May 22, 2023                                          */s/ Jonathan Y. Ellis*
                                                                         Jonathan Y. Ellis

                                                                         *Counsel for Plaintiff-Appellee*
                                                                         *Sprint Communications LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of electronic filing to all counsel of record who are registered CM/ECF users.

Dated: May 22, 2023

*/s/ Jonathan Y. Ellis*
Jonathan Y. Ellis

*Counsel for Plaintiff-Appellee*
*Sprint Communications LLC*

# Exhibit 1



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Apr 26 03:47:02 EDT 2018*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | PREV LIST | NEXT LIST | IMAGE LIST | BOTTOM | HELP |

Logout | *Please logout when you are done to release system resources allocated for you.*

| Start | List At: | [_____] | OR | Jump | to record: | [_____] |

## 89 Records(s) found (This page: 1 ~ 50)

Refine Search [ (nextel)[COMB] ]  Submit

**Current Search: S1: (nextel)[COMB] docs: 89 occ: 192**

|  | Serial Number | Reg. Number | Word Mark | Check Status | Live/Dead |
|---|---|---|---|---|---|
| 1 | 87774826 | | NEXTEL | TSDR | LIVE |
| 2 | 87220918 | | NEXTEL | TSDR | DEAD |
| 3 | 87381493 | | NEXTEL | TSDR | DEAD |
| 4 | 78947337 | | SPRINT POWER UP TOGETHER WITH NEXTEL | TSDR | DEAD |
| 5 | 78553594 | | NEXR2 | TSDR | DEAD |
| 6 | 78553591 | | NEXR2 | TSDR | DEAD |
| 7 | 78407763 | 3038416 | NEXGARD | TSDR | LIVE |
| 8 | 78297324 | 3389662 | NEXTEL | TSDR | DEAD |
| 9 | 78423625 | | NEXTEL COMPATIBLE SOLUTION | TSDR | DEAD |
| 10 | 78388398 | | NEXTEL FLEX PLAN | TSDR | DEAD |
| 11 | 78309768 | | NEXTEL. DONE BETTER. | TSDR | DEAD |
| 12 | 78309762 | | NEXTEL. DONE RIGHT. | TSDR | DEAD |
| 13 | 78304076 | 2945251 | NEXTEL.DONE. | TSDR | DEAD |
| 14 | 78304070 | 2979283 | NEXTEL.DONE. | TSDR | DEAD |
| 15 | 78295911 | 2958412 | NEXTEL | TSDR | DEAD |
| 16 | 78291305 | | NEXTEL OPTIONS | TSDR | DEAD |
| 17 | 78289673 | | NEXTEL OPTIONS FLAT RATE | TSDR | DEAD |
| 18 | 78289672 | | NEXTEL OPTIONS ADVANCE PAY | TSDR | DEAD |
| 19 | 78289669 | | NEXTEL OPTIONS FLEX RATE | TSDR | DEAD |
| 20 | 78289668 | | NEXTEL OPTIONS EASY PAY | TSDR | DEAD |
| 21 | 78282396 | 2950172 | NEXTEL. DONE. | TSDR | DEAD |
| 22 | 78282169 | | NEXTEL PREFERRED PARTNERS | TSDR | DEAD |
| 23 | 78278966 | | NEXTEL WIRELESS BROADBAND | TSDR | DEAD |
| 24 | 78225528 | | NEXTEL ICONTROL | TSDR | DEAD |
| 25 | 78225219 | | NEXTEL ICONNECT | TSDR | DEAD |
| 26 | 78225215 | | NEXTEL ICARE | TSDR | DEAD |
| 27 | 78206341 | | NEXTEL EMERGENCY GROUP CONNECT | TSDR | DEAD |

| 28 | 78145216 |         | NEXTEL NUMBERS                             | TSDR | DEAD |
|----|----------|---------|--------------------------------------------|------|------|
| 29 | 77368305 |         | N                                          | TSDR | DEAD |
| 30 | 76977798 | 3067324 | NEXTEL.YA.                                 | TSDR | DEAD |
| 31 | 76977106 | 2987131 | NEXTEL GROUP CONNECT                       | TSDR | DEAD |
| 32 | 76976733 |         | NEXTEL DIRECT CONNECT GET RIGHT THROUGH.   | TSDR | DEAD |
| 33 | 76577223 |         | REPAIR NEXTEL AUTHORIZED SERVICE CENTER    | TSDR | DEAD |
| 34 | 76577222 |         | NEXTEL.YA.                                 | TSDR | DEAD |
| 35 | 76577221 | 3121202 | NEXTEL FOR LIFE                            | TSDR | DEAD |
| 36 | 76577220 |         | NEXTEL.YA.                                 | TSDR | DEAD |
| 37 | 76577219 |         | REPAIR NEXTEL AUTHORIZED SERVICE CENTER    | TSDR | DEAD |
| 38 | 76448245 |         | NEXTEL GROUP CONNECT                       | TSDR | DEAD |
| 39 | 76426103 |         | NEXTEL U                                   | TSDR | DEAD |
| 40 | 76416977 |         | NEXTEL IPLAY                               | TSDR | DEAD |
| 41 | 76416976 |         | NEXTEL ISTORE                              | TSDR | DEAD |
| 42 | 76416975 |         | NEXTEL IGAME                               | TSDR | DEAD |
| 43 | 76415496 |         | NEXTEL DIRECT CONNECT GET RIGHT THROUGH.   | TSDR | DEAD |
| 44 | 76415495 |         | NEXTEL                                     | TSDR | DEAD |
| 45 | 76391792 |         | NEXTEL COMPATIBLE PRODUCT                  | TSDR | DEAD |
| 46 | 76391791 |         | THE NEXTEL STORE                           | TSDR | DEAD |
| 47 | 76391790 | 2863268 | POWERED BY NEXTEL                          | TSDR | DEAD |
| 48 | 76391789 |         | THE NEXTEL STORE                           | TSDR | DEAD |
| 49 | 76391788 |         | DISCOVER THE NEXTEL ADVANTAGE             | TSDR | DEAD |
| 50 | 76383722 |         | NEXTEL COMPATIBLE PRODUCT                  | TSDR | DEAD |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   SEARCH OG   PREV LIST   NEXT LIST   IMAGE LIST   TOP   HELP

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Apr 26 03:47:02 EDT 2018*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | PREV LIST | NEXT LIST | IMAGE LIST | BOTTOM | HELP |

Logout  *Please logout when you are done to release system resources allocated for you.*

| Start | List At: | [          ] OR | Jump | to record: [          ] |

### 89 Records(s) found (This page: 51 ~ 89)

Refine Search [ (nextel)[COMB] ]  Submit

**Current Search:** S1: **(nextel)[COMB]** docs: 89 occ: 192

| | Serial Number | Reg. Number | Word Mark | Check Status | Live/Dead |
|---|---|---|---|---|---|
| 51 | 76351872 | | NEXTEL PREMIER CLUB GOLD | TSDR | DEAD |
| 52 | 76351871 | | NEXTEL PREMIER CLUB SILVER | TSDR | DEAD |
| 53 | 76333589 | 2751945 | NEXTEL COMPATIBLE | TSDR | DEAD |
| 54 | 76333588 | | NEXTEL COMPATIBLE LOGO | TSDR | DEAD |
| 55 | 76333587 | 2692446 | NEXTEL NATIONAL PLANS | TSDR | DEAD |
| 56 | 76301404 | | NBI NEXTEL BROADBAND, INC. | TSDR | DEAD |
| 57 | 76301026 | | NEXTEL BROADBAND | TSDR | DEAD |
| 58 | 76299199 | | NEXTEL INTERNATIONAL | TSDR | DEAD |
| 59 | 76280540 | 2765052 | NEXTEL DIRECT CONNECT. GET RIGHT THROUGH | TSDR | DEAD |
| 60 | 76280533 | | NEXTEL. GET RIGHT THROUGH | TSDR | DEAD |
| 61 | 76271018 | | NEXTEL ITRAVELER | TSDR | DEAD |
| 62 | 76261505 | 2662044 | NEXTEL | TSDR | LIVE |
| 63 | 76223568 | 2737925 | NEXTEL MOBILE EXTENSION | TSDR | DEAD |
| 64 | 76162358 | | NEXTEL REWARDS | TSDR | DEAD |
| 65 | 75854539 | 2764617 | NEXTEL HOW BUSINESS GETS DONE INSTANTLY | TSDR | DEAD |
| 66 | 75794507 | 2391504 | NEXTEL | TSDR | DEAD |
| 67 | 75759904 | 2435925 | NEXTEL.HOW BUSINESS GETS DONE. | TSDR | DEAD |
| 68 | 75636427 | 2430370 | NEXTEL ONLINE | TSDR | DEAD |
| 69 | 75624617 | 2326015 | NEXTEL NATIONAL BUSINESS PLAN | TSDR | DEAD |
| 70 | 75592953 | 2403310 | GET SMART.GET NEXTEL. | TSDR | DEAD |
| 71 | 75583910 | | NEXTEL MILLENIUM | TSDR | DEAD |
| 72 | 75244957 | 2236098 | NEXTEL DIRECT CONNECT | TSDR | LIVE |
| 73 | 75491627 | 2306603 | NEXTEL NEXTDAY | TSDR | DEAD |
| 74 | 75474677 | 2359176 | NEXTEL BUSINESS NETWORKS | TSDR | DEAD |
| 75 | 75450399 | 2251278 | NEXTEL LONG DISTANCE | TSDR | DEAD |
| 76 | 75370689 | | NEXRENT | TSDR | DEAD |
| 77 | 75352372 | | NEXTEL.NET | TSDR | DEAD |

| 78 | 75338594 | 2598270 | NEXTEL WORLDWIDE | TSDR | DEAD |
| 79 | 75303099 | | NEXTEL NET | TSDR | DEAD |
| 80 | 75245041 | | GET SMART.GET NEXTEL. | TSDR | DEAD |
| 81 | 75227919 | 2358982 | NEXTEL | TSDR | DEAD |
| 82 | 74395026 | 1884244 | NEXTEL | TSDR | LIVE |
| 83 | 74066566 | 1637139 | NEXTEL | TSDR | LIVE |
| 84 | 74523547 | | NEXTEL | TSDR | DEAD |
| 85 | 73740322 | 1557999 | NEXTEL | TSDR | LIVE |
| 86 | 73728411 | 1532793 | NEXTEL | TSDR | LIVE |
| 87 | 73296240 | 1228005 | NEXTEL | TSDR | LIVE |
| 88 | 72393555 | 0928428 | NEXTEL | TSDR | DEAD |
| 89 | 72264636 | 0832101 | NEXTEL | TSDR | DEAD |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | PREV LIST | NEXT LIST | IMAGE LIST | TOP | HELP |

| HOME | SITE INDEX| SEARCH | *e*BUSINESS | HELP | PRIVACY POLICY

# Exhibit 2

1/28/2019 Case 0:18-cv-60788-JEM Document 318-19 Entered on FLSD Docket 05/03/2022 Page 1 of 1
Trademark Electronic Search System (TESS)

USCA11 Case: 22-11717 Document: 56 Date Filed: 05/22/2023 Page: 29 of 29

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

TESS was last updated on Mon Jan 28 05:21:02 EST 2019

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At: ____  OR  Jump  to record: ____   **Record 10 out of 91**

| TSDR | ASSIGN Status | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*

### NEXTEL

| Word Mark | NEXTEL |
|---|---|
| Goods and Services | (CANCELLED) IC 009. US 021 023 026 036 038. G & S: Equipment used in providing telecommunications services, namely, mobile radios, two-way radios, cellular telephones, digital cellular telephones, mobile telephones, dispatch radios, radio pagers, mobile dispatch radios, mobile data receivers and transmitters and handheld units for the wireless receipt and transmission of voice, data, video, music and pictures, namely, handheld personal computers and personal digital assistants (PDAs); positioning, tracking, monitoring and security systems comprised of wireless communications transmitters and receivers; hardware and software for use in communications networks, namely, software and Internet protocol and telecommunications network transmitters, receivers, converters, and routers, all of which allow the user to send voice, data, pictures, music and video over wireless networks. FIRST USE: 20030915. FIRST USE IN COMMERCE: 20030915 |
|  | (CANCELLED) IC 038. US 100 101 104. G & S: Telecommunication services, namely, electronic, electric and digital transmission of voice, data, pictures, music and video via wireless networks; two-way radio dispatching services, electronic transmission of voice, text, images, data, music and information by means of two-way radios, mobile radios, cellular telephones, digital cellular telephones, mobile telephones, handheld units, namely, personal computers and digital assistants (PDAs), dispatch radios, and pagers; paging services; transmission of positioning, tracking, monitoring and security data via wireless communications devices; mobile telephone communication services; wireless Internet access services; and wireless data services for mobile devices via a wireless network for the purpose of sending and receiving electronic mail, facsimiles, data, images, music, information, text, numeric messaging and text messaging and for accessing a global communications network. FIRST USE: 20030915. FIRST USE IN COMMERCE: 20030915 |
| Mark Drawing Code | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| Design Search Code | 26.11.21 - Rectangles that are completely or partially shaded |
| Trademark Search Facility Classification Code | INAN Inanimate objects such as lighting,clouds,footprints,atomic configurations,snowflakes,rainbows,flames SHAPES-COLORS-2 Design listing or lined for two colors SHAPES-GEOMETRIC Geometric figures and solids including squares, rectangles, quadrilaterals and polygons SHAPES-MISC Miscellaneous shaped designs |
| Serial Number | 78297324 |
| Filing Date | September 8, 2003 |
| Current Basis | 1A |
| Original Filing Basis | 1B |
| Published for Opposition | June 22, 2004 |
| Registration Number | 3389662 |
| Registration Date | February 26, 2008 |
| Owner | (REGISTRANT) S-N MERGER CORP. CORPORATION DELAWARE 2001 EDMUND HALLEY DR. RESTON VIRGINIA 20191 |
| Assignment Recorded | ASSIGNMENT RECORDED |
| Attorney of Record | Travis P. Boozer |
| Prior Registrations | 1637139;1884244;2391504;AND OTHERS |
| Description of Mark | The color(s) yellow and black is/are claimed as a feature of the mark. The color yellow appears as the background to the wording and the color black appears in the word Nextel and to the right side of the rectangle. |
| Type of Mark | TRADEMARK. SERVICE MARK |
| Register | PRINCIPAL |
| Live/Dead Indicator | DEAD |
| Cancellation Date | October 3, 2014 |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



EXHIBIT

130

1-29-18